[Crim. No. 3261. Fifth Dist. Jan. 29, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
ORVAL CHRISTOPHER STEWART, Defendant and Appellant.

## COUNSEL

Baron L. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and Jane Kirkland Fischer, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HOPPER, J.**—This is an appeal from a judgment of conviction on several Penal Code violations (Pen. Code, §§ 261, 288a and 288)[1] after

---

[1]Two informations (No. 17620 and No. 17621) were filed and subsequently consolidated for trial.

the jury rejected appellant's plea of not guilty by reason of insanity. The facts of the offense are not at issue herein and no purpose would be served by relating the sordid details.

In August 1975, appellant initially entered a plea of not guilty. Subsequently, on October 9, 1975, he withdrew that plea and entered a single plea of not guilty by reason of insanity. Appellant was informed of his rights and two psychiatrists were appointed to examine him as to his sanity. On December 29, 1975, appellant moved to enter an additional plea of not guilty. That request was withdrawn on January 9, 1976.

At the beginning of the jury trial in February of 1976 on the insanity plea, at the request of appellant's counsel, the court explained several aspects of the proceedings to the appellant. Appellant's counsel informed the court that appellant did not understand the proceedings and counsel moved for a hearing pursuant to Penal Code section 1368 to determine if appellant was mentally competent to stand trial. The court ordered that appellant be examined by a psychiatrist. That psychiatrist reported to the court that appellant showed no mental abnormality and was able to cooperate and assist his trial counsel. The court denied the Penal Code section 1368 motion. After the jury found that appellant was sane, the proceedings were adjourned to determine if appellant was a mentally disordered sex offender and two doctors were appointed to examine appellant for that purpose. On April 15, 1976 (the day that jury trial commenced to determine if appellant was a mentally disordered sex offender), appellant moved, under Penal Code section 1018, to reinstate his plea of not guilty. The next day the jury found appellant to be a mentally disordered sex offender. On April 20, 1976, the jury determined that appellant could not benefit by treatment in a state hospital or other mental health facility. On May 21, 1976, after a hearing, appellant's motion to change his plea was denied.

Appellant contends that he was entitled to a trial to determine his mental competency to stand trial on the charges; that he should have been allowed to change his plea; that at the trial to determine if he was amenable to treatment the court committed reversible error in refusing to give certain jury instructions; and that reversible error was committed in not determining the sanity issue under the tests set out in *People* v. *Drew* (1978) 22 Cal.3d 333 [149 Cal.Rptr. 275, 583 P.2d 1318]. We discuss each of those contentions in order.

I

## THE PENAL CODE SECTION 1368 MOTION

Penal Code section 1368, subdivision (b), provides: "(b) If counsel informs the court that he believes the defendant is or may be mentally incompetent, the court *shall* order that the question of the defendant's mental competence is to be determined in a hearing which is held pursuant to Sections 1368.1 and 1369. If counsel informs the court that he believes the defendant is mentally competent, the court may nevertheless order a hearing. Any hearing shall be held in the superior court." (Italics added.)

A literal reading of Penal Code section 1368, subdivision (b), supports the appellant's position that if counsel informs the court of his belief in the possible incompetence of his client, then the court shall order a hearing. Nevertheless, the decision of the Court of Appeal for the First District in *People* v. *Hays* (1976) 54 Cal.App.3d 755, 760 [126 Cal.Rptr. 770], in interpreting that section, holds that a defendant is not entitled to a trial on the issue of his mental competence merely upon the statement of defense counsel, but that there must be objective substantial evidence of doubt as to the defendant's mental competence before he is entitled to a full hearing pursuant to section 1368 (see also *People* v. *Johnson* (1978) 77 Cal.App.3d 866, 870-871 [143 Cal.Rptr. 852]; *People* v. *Humphrey* (1975) 45 Cal.App.3d 32, 37 [119 Cal.Rptr. 74]). We concur. We believe that subdivision (b) must be read in connection with the entire statutory scheme (see Parker, *California's New Scheme For the Commitment of Individuals Found Incompetent to Stand Trial* (1975) 6 Pacific L.J. 484, 506; see also *Hale* v. *Superior Court* (1975) 15 Cal.3d 221, 226 [124 Cal.Rptr. 57, 539 P.2d 817]).

Appellant's contention that substantial evidence exists any time counsel informs the court that his client may be incompetent is without merit. When the judge's attention is called to the issue of incompetency, or he suspects the possibility (Pen. Code, § 1368, subd. (a)), the trial judge has a duty to determine whether or not there is substantial evidence to require a full hearing. If the judge determines that a full hearing is required, he is then obligated to conduct such a proceeding. Otherwise, in the absence of an abuse of discretion, a full hearing is not required.

There was no abuse of discretion in this case.[2] A full hearing under Penal Code section 1368 was not required under the circumstances. The record in this case supports the trial court's determination that there was no substantial evidence of doubt that appellant was competent to stand trial, and in such a situation the finding of the trial court should not be disturbed (*People* v. *Campbell* (1976) 63 Cal.App.3d 599, 608 [133 Cal.Rptr. 815]). Two psychiatrists who examined appellant in October of 1975 felt he was mentally competent at the time of the interview. In addition, on a number of occasions, after lengthy explanations with the judge, appellant stated he understood the proceedings. Appellant's attorney indicated that he advised appellant that "trying to deny these charges (after the attorney had reviewed the evidence) seemed like something that tactically might alienate the jury and that they were so gross that [appellant's] best chance was to try and convince the jury that he was less than sane within the legal meaning of the law."

## II

### DENIAL OF THE MOTION TO REINSTATE THE PLEA OF NOT GUILTY

█ Appellant asserts that his motion to change his plea to one of not guilty should have been granted and that his counsel was ineffective in allowing him to plead as he did. When appellant withdrew his plea of not guilty and left standing only his plea of not guilty by reason of insanity, he admitted the commission of the offenses charged (Pen. Code, § 1016). Thereafter, he was subject to the general rule applicable to withdrawal of a plea of guilty. As this court said in *People* v. *Waters* (1975) 52 Cal.App.3d 323, 328 [125 Cal.Rptr. 46]: "The granting or denial of an application to withdraw a guilty plea is within the discretion of the trial court after a consideration of all the factors necessary to bring about a just result; and the decision of the trial judge will not be disturbed on appeal unless an abuse thereof is clearly demonstrated. [Citations.] While the section is to be liberally construed and a plea of guilty may be withdrawn for mistake, ignorance, or inadvertence or any other factor overreaching defendant's free and clear judgment, the facts of such grounds must be established by clear and convincing evidence. [Citations.]" (See also *People* v. *Superior Court (Giron)* (1974) 11 Cal.3d 793, 796 [114 Cal.Rptr. 596, 523 P.2d 636].)

---

[2] There can be no abuse of discretion absent substantial evidence of incompetence (see *People* v. *Laudermilk* (1967) 67 Cal.2d 272, 283, fn. 10 [61 Cal.Rptr. 644, 431 P.2d 228]; *People* v. *Pennington* (1967) 66 Cal.2d 508, 518 [58 Cal.Rptr. 374, 426 P.2d 942]. The California Supreme Court recently found it unnecessary to resolve an issue of possible abuse of discretion in the case of *In re Ramon M.* (1978) 22 Cal.3d 419 [149 Cal.Rptr. 387, 584 P.2d 524]).

■ To justify reversal of a conviction on the ground that the defendant has been denied the effective assistance of counsel, the defendant has the burden of establishing counsel's ineffectiveness by showing "that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates. In addition, appellant must establish that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense." (*People v. Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859]; see also *People v. Gainer* (1977) 19 Cal.3d 835, 858 [139 Cal.Rptr. 861, 566 P.2d 997].)

■ It is clear that the not guilty by reason of insanity plea was a tactical decision made by counsel after full discussion with, and agreement by, appellant. In this regard the record shows that several times, in an on-again off-again routine, appellant would change his mind, and each time that appellant stated that he did not understand, his trial counsel and the court reviewed with and explained to appellant the significance of the proceedings and the meaning and effect of the plea. During this period, three doctors and the judge concluded that appellant was mentally competent. Appellant clearly understood and agreed to his attorney's recommendation in entering the proper plea. We believe that the trial judge was correct in concluding that the appellant was told, and understood, that his plea of not guilty by reason of insanity had the same effect as a plea of guilty if he were found sane. As to the tactics used, there was no abuse of discretion by the judge. There was no error. The record contains an explanation demonstrating that counsel was reasonably competent, acting as a conscientious, diligent advocate and that the acts and omissions resulted from an informed tactical choice within the range of reasonable competence. (See *People v. Pope, supra,* 23 Cal.3d at pp. 425-426.)

III

PROPOSED JURY INSTRUCTIONS

■ Appellant asserts that it was reversible error at the trial to determine if appellant was amenable to treatment to refuse to give certain jury instructions proposed by the appellant. Those instructions included:

"You are instructed that predictions of dangerous behavior, no matter who makes them, are incredibly inaccurate, and there is a growing consensus that psychiatrists are not uniquely qualified to predict dangerous behavior and are, in fact, less accurate in their predictions than other

professions." and "You are instructed that there is no standard whatever for determining when a defendant can or cannot 'benefit by treatment in a state hospital.' The possibilities of error are therefore manifest." and a lengthy instruction on the nature of a mentally disordered sex offender proceeding, the location of the state mental health hospital, the meaning of institutionalization and the practice of commitment being confinement on the grounds of a prison facility under the jurisdiction of the Director of Corrections.

Appellant contends that by not giving such instructions the jury was given no guideline by which to determine if appellant was "amenable to medical treatment" within the mentally disordered sex offender statute (Welf. & Inst. Code, § 6300 et seq.). We disagree.

While appellant is correct that the trial court record is silent as to any specific instruction given to the jury regarding the standard by which the determination of whether or not appellant was amenable to treatment in a hospital or other mental health facility, none of the proposed instructions provided any such standard. As respondent points out, the proposed instructions were merely "a collection of dicta and an explanation of how treatable mentally disordered sex offenders are treated excerpted from leading California Supreme Court cases."

■ Appellant's critical comments on the psychiatric discipline may possibly be warranted, but the weight to be given to psychiatric testimony was for the jury—in this case the very same jury which had found appellant to be a mentally disordered sex offender and which had been specifically instructed in that trial on expert testimony and that such testimony could be disregarded if found to be unreasonable (CALJIC No. 2.80).

In addition, the phrase "amenable to treatment" did not require a definition to be understood. Ordinary words and phrases in statutes require no definition because they are presumed to be understood by jurors. (*People* v. *Jones* (1971) 19 Cal.App.3d 437, 447 [96 Cal.Rptr. 795]; 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 216, p. 3033). Furthermore, the verdict form itself in this case was quite clear and used the language "could not benefit by treatment," which is the terminology found in Welfare and Institutions Code section 6316 (see L. A. Super. Ct. Crim. Trial Judges' Benchbook, p. 495). There was no error.

## IV

### THE DREW ISSUE

■ In *Drew* the Supreme Court adopted the American Law Institute (ALI) test for insanity. Under that test "a person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." (*People* v. *Drew, supra,* 22 Cal.3d 333 at p. 345.) Thus, there are two prongs to the test for insanity: (1) cognitive and (2) volitional. *Drew* specifically applies retroactively to "cases not yet final in which the defendant has pled not guilty by reason of insanity." (*Drew* at p. 348.) Consequently, *Drew* is applicable to this case.[3]

Obviously, in view of the fact that the ALI test was adopted subsequent to the jury trial in this case, neither witnesses nor counsel structured their presentation at the trial (nor was the jury instructed) in terms of the ALI test. As we understand the teachings of *Drew,* the failure to apply the ALI test is not reversible per se. Under the circumstances the function of this court is to examine the record and determine whether the error was prejudicial under California Constitution, article VI, section 13 (see *In re Ramon M. supra,* 22 Cal.3d 419, 431 [149 Cal.Rptr. 387, 584 P.2d 524]), i.e., whether it is reasonably probable that a result more favorable to the appellant would have been reached in the absence of the error. While it is extremely difficult to apply such a rule to a case in which everyone involved used an incorrect standard and not conclude that a new trial is required, nevertheless, we conclude that in the instant case a reversal is unnecessary. If our Supreme Court was requiring that all cases of insanity on appeal at the time of *Drew* be reversed, their use of the reasonable probability language would have been unnecessary.

In *Drew* the record shows that Drew was a former mental patient with a history of irrational assaultive behavior; that he was mentally impaired; that he was incapable of controlling his behavior; that he could be controlled temporarily by medication; that the psychiatric testimony pictured him as a latent schizophrenic who did not know that his

---

[3]In the present case appellant's counsel had notified this court (after *Drew*) that counsel expressly waived oral argument. Accordingly, counsel did not appear and the matter was submitted without any discussion of *Drew.* Under those circumstances, we assumed that appellant had no intention of raising the ALI test issue. Therefore, there was no need at that time to discuss the ALI test. Subsequently, on petition of appellant, we granted a rehearing limited to the *Drew* issue.

assaultive activities were wrong; and there was no evidence presented by the People, reliance being entirely on the rule that a defendant had the burden of proof in a sanity trial. The record in the instant case is almost diametrically opposed to the picture presented in *Drew*. While appellant had been to a state hospital for a 90-day observation in 1963, apparently confinement was not required. Appellant was not mentally impaired. He did not exhibit any symptoms of psychosis or neurosis. There were no signs of any hallucination. There was no indication of mental illness. The entire psychiatric testimony concluded that appellant was suffering from a passive-aggressive personality disorder. Such a disorder resulting in pedophilia is not a mental defect or mental disease. Appellant was not irrational. He was not out of contact with reality. He did not feel it necessary to justify intercourse with a 13-year-old girl. While appellant admitted that he knew the acts of which he was accused were against the law, he did the acts because "it was there" and he did not care about the law. Appellant stated that there was nothing wrong with his mind that kept him from knowing what he was going to do. He also stated that he did not care whether others knew about his intercourse with a 13 year old. He knew he could be punished but he committed the act anyway and was willing to take the risk. The entire picture presented by the evidence is that of a person who not only knew what he was doing but also one who willingly and voluntarily committed the acts. The psychiatrists also concluded that appellant made a conscious decision to act in contravention of what appellant knew to be the law. Thus, neither the cognitive nor the volitional prongs of the ALI test have been satisfied sufficiently to establish insanity in the instant case. When a person of sound mind "freely chooses to violate the law, he may justly be held responsible." (*Drew* at p. 339.)

In addition, under *Drew* the accused retains the burden of proof on the issue of insanity. (*Drew* at p. 348.) Appellant failed to meet that burden. The sanity trial consisted of appellant's testimony and that of two court-appointed psychiatrists. In appellant's testimony he claimed that he was not guilty of committing the acts (which he had already admitted by withdrawal of his not guilty plea, leaving only the insanity plea in issue) and that he was not insane. Nowhere did appellant testify (or produce evidence in any manner) that as a result of mental disease or defect that he lacked "substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." On the other hand, as heretofore stated, the psychiatrists clearly set out their reasoning that appellant was not even suffering from a mental disease or defect. We also note that other psychiatrists, who testified at the mentally

disordered sex offender trial, agreed that appellant had a personality "disorder" and not a defect or a disease (Welf. & Inst. Code, § 6300 applies to all three conditions (defect, disease or disorder) combined or in the alternative).

In the face of the record which sets out conclusive evidence that appellant was sane, we conclude that it is not reasonably probable that if the ALI test were employed appellant would have been declared insane. (Cal. Const., art. VI, § 13.)

The judgment is affirmed.

Brown (G. A.), P. J., and Meyers, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 12, 1979.

*Assigned by the Chairperson of the Judicial Council.