[No. B003090. Second Dist., Div. Six. Mar. 27, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLOS CHACON ACEVEDO, Defendant and Appellant.

**COUNSEL**

Jeffrey J. Stuetz, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Andrew D. Amerson and Susan D. Martynec, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GILBERT, J.**—Defendant Carlos Acevedo appeals his conviction of two counts of rape. (Pen. Code, § 261, subd. (2).)[1] Acevedo argues on appeal that (1) the trial judge erred by failing to instruct on the lesser included offenses of attempted rape and assault with the intent to rape; (2) the trial judge erred by failing to instruct the jury that it could not consider both offenses at the same time in considering Acevedo's guilt of either; (3) evidence of the offense against one victim should not have been admitted, referred to, or considered in determining the offense against the other victim; (4) the jury instruction as to an accused's good faith and reasonable belief in the victim's consent was incorrect and misleading; and (5) the mandatory prison sentence for rapists who use force constitutes a denial of equal protection.

We disagree and affirm the judgment.

---

[1]All statutory references are to the California Penal Code unless indicated otherwise.

## FACTS

Josefina P., a Mexican citizen in the United States illegally, employed defendant Acevedo to teach her to drive. On the fourth lesson Acevedo drove her to a lemon grove. There, she was practicing her driving, when Acevedo suddenly grabbed her and said, "I'm going to make you mine." She became frightened and asked him to release her. Acevedo slapped her, shook her, and ordered her to disrobe. He also threatened to tear off her clothing, abandon her in the lemon grove, and take away her children if she did not comply.

Josefina undressed because she feared she would be hurt and abandoned in the lemon grove. She testified that Acevedo "used her twice." She covered her face and cried during this time. Acevedo thereafter cleaned himself with paper towels he had placed in the car when Josefina arrived for her fourth lesson.

Acevedo drove Josefina home. Not surprisingly, she discontinued further lessons with Acevedo. She did not report the rape at the time because she did not trust anyone.

Eleven months later Esperanza C. employed Acevedo to teach her to drive. Esperanza and her child had traveled from Colombia to seek medical treatment for the child. Acevedo took Esperanza to his home to prepare her for the written portion of the California driver's examination.

Esperanza testified that Acevedo attempted to show her a pornographic magazine and encouraged her to lie on a mattress he contemplated giving her. She declined these invitations but became interested when he offered to take a photograph of her and her child. Acevedo lent her a Mexican sombrero to wear. She stood before a full length mirror in his bedroom. He suddenly pushed her onto the bed, lay on top of her, held her wrists, and tried to kiss her. She screamed and struggled and he released her. She fled to the living room where she discovered a pair of scissors. Acevedo followed her, tried to calm her, and explained "it was only a try." She threatened him with the scissors as she gathered her child and her belongings. Esperanza then left the house.

Acevedo called after her and offered to drive her to an appointment she had with her child's physician. Esperanza accepted, but sat in the back seat of the car and continued to hold the scissors as a weapon.

Esperanza was crying when she arrived at the physician's office. By an astonishing coincidence, Josefina was there awaiting an appointment for her

child, and overheard Esperanza relate to the nurse what had just happened to her. The two women then shared their experiences as students of Acevedo and thereafter related them to the police.

Acevedo's account of these incidents differed. He testified that as they were in the lemon grove, Josefina described her sexual experience with her former husband. Acevedo construed this as a sexual overture and inquired if she desired intercourse with him. Josefina responded by disrobing and they engaged in intercourse. Another act of intercourse did not occur, according to Acevedo, as his sexual prowess does not include two acts of intercourse within a short time period. He also explained that he placed the paper towels in the car to clean the windshield. He denied striking or threatening Josefina.

Acevedo testified he and Esperanza accidentally tumbled onto his bed, but denied showing her pornographic magazines or attempting to kiss her.

The jury convicted Acevedo of two counts of rape against Josefina but could not agree on the charge pertaining to Esperanza. That charge was subsequently dismissed and the trial judge sentenced Acevedo to the mandatory minimum three-year term for each rape count, to be served concurrently.

DISCUSSION

I

 Acevedo contends the trial judge erred by failing to give the lesser included offense instructions on attempted rape and assault with the intent to commit rape, because Acevedo's threats to abandon Josefina or take away her children may have induced Josefina's compliance with his demands. If so, rape did not occur because section 261, subdivision (2) requires "force or fear of immediate and unlawful bodily injury." We find this argument unpersuasive.

 The trial court's obligation to give instructions on lesser included offenses arises when the evidence raises a question whether all elements of the charged offense exist, but not when there is no evidence that the offense is less than that charged. (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 323-324 [185 Cal.Rptr. 436, 650 P.2d 311].) It is settled that where the evidence establishes that if a defendant is guilty at all, he is guilty of a greater offense, the court need not instruct the jury on lesser included of-

fenses. (*People* v. *Kent* (1979) 96 Cal.App.3d 130, 136 [158 Cal.Rptr. 35]; *People* v. *Nash* (1968) 261 Cal.App.2d 216, 223 [67 Cal.Rptr. 621].) Josefina testified Acevedo slapped her, shook her, and she believed he would hurt her. Her testimony satisfied the force or fear of immediate body injury element of forcible rape.

Acevedo argues that the jury could disbelieve this part of Josefina's testimony and the element of force would not be established although there would be sufficient evidence of lesser included offenses. If we were to adopt Acevedo's argument, lesser included offense instructions would be warranted in every criminal prosecution as the jury is always entitled to believe all or part of the prosecution's evidence. Our Supreme Court recently acknowledged that rejection of prosecution evidence does not warrant instructions on lesser *related* offenses. (*People* v. *Geiger* (1984) 35 Cal.3d 510, 531 [199 Cal.Rptr. 45, 674 P.2d 1303].) The court stated "the first prerequisite to receiving instructions on lesser related offenses must be the existence of some basis, other than an unexplainable rejection of prosecution evidence, on which the jury could find the offense to be less than that charged." We conclude that disbelief of all or part of the prosecution case does not require instruction on lesser included offenses, either.

## II

Acevedo argues that the trial judge should have instructed the jury that it could not consider both offenses at the same time in considering Acevedo's guilt of either. (*In re Anthony T.* (1980) 112 Cal.App.3d 92, 101 [169 Cal.Rptr. 120].) It is true that the trial judge did not instruct the jury to consider each offense separately. Such an instruction would seem to be required as a general principle of law relevant to the issues in the trial. (*People* v. *Wickersham, supra,* 32 Cal.3d 307, 323.)

Despite the judge's failure to so instruct, it appears that the jury separately considered the offenses, because it failed to agree on the Esperanza offense yet convicted Acevedo of the Josefina offense. Although Acevedo invites us to speculate on how the holdout juror on the Esperanza offense used the facts of that offense to convict Acevedo on the Josefina offense, such speculation does not amount to a clear showing of prejudice. It is not likely a different result would be more probable if this instruction had been given. (*In re Anthony T., supra,* 112 Cal.App.3d 92, 102.)

In the case of *In re Anthony T.*, a juvenile was accused of committing two robberies. The robberies were not committed in a similar manner, and the

identity of the perpetrator was in issue. The court considered both robberies in deciding the minor's guilt as to each. This required a reversal because the trial judge considered it a "close" case, and his failure to consider each count separately prejudiced the minor. A different result would have been more probable absent the error. Failure to give the instruction in *In re Anthony T.* thus made a difference. Here it does not.

### III

Acevedo also contends that the evidence of the Esperanza offense should not have been admitted, referred to by the prosecutor,[2] or considered by the jury with respect to the Josefina offenses. (Evid. Code, § 1101, subd. (a); *People* v. *Key* (1984) 153 Cal.App.3d 888, 895 [203 Cal.Rptr. 144].)

■ Although it is true, as Acevedo argues, that a court has broader discretion to refuse severance than it does to admit evidence of other charges, here, there was no motion in the trial court to sever the charges nor was there any objection to the prosecutor's argument. Consequently, the trial judge was never requested to review the cross-admissibility of the evidence of the Esperanza and Josefina offenses. (*Williams* v. *Superior Court* (1984) 36 Cal.3d 441, 448 [204 Cal.Rptr. 700, 683 P.2d 699].) Acevedo therefore cannot complain on appeal of the cross-admissibility of evidence of the offenses.

### IV

■ Acevedo contends that the jury instruction on an accused's reasonable and good faith mistake as to consent (10.23) was incorrect and misled the jury. CALJIC No. 10.23 provides: "It is a defense to a charge of forcible rape that the defendant entertained a reasonable and good faith belief that the female person voluntarily consented to engage in sexual intercourse. If from all the evidence you have a reasonable doubt whether the defendant reasonably and in good faith believed she voluntarily consented to engage in sexual intercourse, you must give the defendant the benefit of that doubt and acquit him of said charge." Although Acevedo presents a thoughtful analysis, we hold that 10.23 accurately stated reasonable and good faith mistake as to consent to the jury.

---

[2]During closing argument the prosecutor argued that both women testified that Acevedo perspired and panted. The prosecutor also referred to the Josefina offense to establish the specific intent element of assault with the intent to commit rape in the Esperanza offense. This would be a proper use of this evidence under *People* v. *Key* (1984) 153 Cal.App.3d 888, 896 [203 Cal.Rptr. 144]. Moreover, since a mistrial occurred and the court dismissed the Esperanza count, Acevedo cannot complain of this reference.

Acevedo argues that consent is not technically a defense as the prosecution must prove nonconsent as part of its corpus delicti; the instruction does not define "consent"; it does not relate to the instruction concerning general criminal intent (CALJIC No. 3.30); and its reference to reasonable doubt is confusing. We do not agree and hold the instruction is proper.

An instruction essentially the same as 10.23 was sanctioned in *People* v. *Mayberry* (1975) 15 Cal.3d 143 [125 Cal.Rptr. 745, 542 P.2d 1337]. There, our Supreme Court held that although the prosecution must prove every element of the offense of rape beyond a reasonable doubt, which necessarily includes a lack of consent, the accused still bears the burden of proving a good faith and reasonable belief in consent. He must raise a reasonable doubt as to that issue. (*Id.*, at p. 157.)

Acevedo finds no fault with the instruction as approved in *Mayberry*, because it was decided in 1975 under a different rape law than the one involved here. The jury instruction upheld in *Mayberry* informs the jury that the crime of rape consists of an act of sexual intercourse, done without the consent of the victim, and when her resistance is overcome by force or violence. Since under the reasonable doubt instruction, the jury would know that the prosecution had to prove lack of consent beyond a reasonable doubt, 10.23 would cause no confusion. Acevedo further argues that because of the different rape instruction given today, which does not even mention the word "consent," *Mayberry* is no longer applicable.

We disagree and find *Mayberry* is still persuasive authority under the current rape law, which is defined as sexual intercourse against a person's will. (§ 261, subd. (2).) Here the jury was told the prosecutor bore the burden of establishing beyond a reasonable doubt that intercourse was "against the will of the victim." The current law "[b]y definition . . . is nonconsensual sexual intercourse." (*People* v. *Key, supra,* 153 Cal.App.3d 888, 895.) It is clear that "consent" in 10.23 refers to the will of the victim. Webster's New Collegiate Dictionary defines "will" as a verbal auxiliary "used to express desire, choice, willingness, *consent,* or in negative constructions refusal . . . ." (Webster's New Collegiate Dict. (1981) p. 1331.) Webster's Third New International Dictionary of the English Language Unabridged (1981) page 2617 defines "will" among other things as "desire, wish, esp: a desire to act in a particular way . . . something wished for or desired . . . the act of choosing or determining . . . the power of choosing and or acting in accordance with choice . . . against one's will: in opposition to one's own inclination or to another's wish or intention."

CALJIC 10.23 does not relieve the prosecutor from the burden of proving beyond a reasonable doubt that the act was committed against the will of

the victim. If the act was committed against her will, it was committed without her consent. The words "will" and "consent" in the context of the statute and instruction 10.23 mean the same thing. Further definitions of such concrete and commonly understood words would raise them to a higher level of abstraction and only cause the very confusion that Acevedo argues is present now.

CALJIC 3.30 informs a jury that in a general intent crime, a defendant is guilty if he intends to commit the act which is prohibited by a penal statute. CALJIC 10.23 still provides a defendant in a rape case, who can prove a good faith belief in the consent of the victim, an exit from the otherwise closed door of 3.30.

CALJIC 10.23 also makes clear that a defendant is required only to raise a "reasonable doubt" whether he had a good faith and reasonable belief that the victim consented. Any confusion the phrase may have caused the jury would inure to Acevedo's benefit as the instruction states that a defendant must receive the benefit of the doubt and hence, an acquittal.

## V

Finally, taking succor from the trial judge's desire to order probation, Acevedo contends that section 1203.065, denying probation to rapists who use force, denies him the equal protection of the law because other rapists may receive probation. Section 1203.065 provides: "[n]otwithstanding any other provision of law, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any person convicted of violating subdivision (2) of section 261 . . . ." This argument is without merit.

The first prerequisite to a meritorious claim under the equal protection guarantees of the United States and California Constitutions is a showing that the state has adopted a classification affecting two or more similarly situated groups in an unequal manner. (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549].) Section 1203.065, subdivision (a) denies probation to rapists who have accomplished their crimes by force against victims in society at large. Rapists who commit their crimes upon unconscious victims or who obtain their victim's consent through trickery or threat of future harm are eligible for probation. This is consistent with California law which denies probation primarily to those who commit violent crimes, serious drug offenses or recidivist offenses. (*People* v. *Gayther* (1980) 110 Cal.App.3d 79, 90 [167 Cal.Rptr. 700].)

There is also a rational purpose for permitting marital rapists to be eligible for probation. They pose less of a danger to the public at large than other

rapists who may choose unknown and random victims. There is a greater likelihood of rehabilitation of marital rapists because their crimes may be based on outmoded notions of what they imagine their rights to be in the marital relationship. Additionally, marital rapists, once rehabilitated, may be able to maintain a loving relationship with their spouses and families. This is beneficial both to the family and to society. Of course, trial courts still have the discretion to impose prison sentences to marital rapists in appropriate cases.

The equal protection guarantees do not require that persons convicted of different crimes be treated equally. The Constitution does not require the law to ignore the circumstances of a crime's commission in imposing punishment. For purposes of equal protection analysis, Acevedo has failed to establish a classification which treats a similarly situated group in disparate ways. (*People* v. *Gayther, supra,* 110 Cal.App.3d at p. 91.) Section 1203.065 precludes probation for all persons convicted of rape by force against women other than their spouses.

Accordingly, the judgment is affirmed.

Stone, P. J., and Abbe, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 23, 1985.