[No. B027809. Second Dist., Div. Six. Nov. 1, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
ROGER LEE THOMPSON, Defendant and Appellant.

**COUNSEL**

Kenneth L. Clayman, Public Defender, and Neil B. Quinn, Deputy Public Defender, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Robert F. Katz, John R. Gorey and William T. Harter, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STONE (S. J.), P. J.**—Roger Lee Thompson appeals from a judgment by jury conviction of two counts of lewd and lascivious acts on a child under the age of 14 years (Pen. Code, § 288, subd. (a)) and findings as to each count that he "made friends with said child victim for the purpose of committing an act in violation of Penal Code section 288," within the meaning of Penal Code section 1203.066, subdivision (a)(3).[1] He contends that: (1) section 1203.066, subdivision (a)(3) is void for vagueness under the California and United States Constitutions; (2) section 1203.066, subdivision (a)(3) denies him equal protection under the state and federal Constitutions; (3) the jury was improperly instructed concerning that special allegation; (4) there is insufficient evidence to support the special allegation; and (5) imposition of a mandatory prison sentence in his case constitutes cruel and unusual punishment. We find no error and affirm the judgment.

### FACTS

Appellant resided next door to seven-year-old Lori Ann, her parents and her eight-year-old sister, Amy. One day when appellant saw Lori Ann, Amy, and their parents out in their yard, appellant approached the children and said, "I bet you like stuffed animals." When Lori agreed, he said, "I got a whole bunch of stuffed animals in the house. What kind do you like?" Lori Ann preferred elephants. Appellant went to his house and returned shortly with two stuffed animals—a pink elephant and a dog. Lori Ann took the elephant to her bedroom. Amy, not an aficionada of stuffed animals, threw hers to the ground.

Several days later, Lori Ann rode her bicycle past appellant's house. Appellant, from within his opened garage, asked Lori Ann if she would like another stuffed animal. She said "yes," and entered the garage. Appellant gave her a purple cow and asked if he could touch her. She assented and he touched her "private parts" four or five times over her clothing. Lori Ann hurried home and showed her stuffed animal to her mother.

Several days later, Lori Ann again rode her bicycle past appellant's house and saw him in the garage. He told her to "come here" and after she entered the garage, gave her a stuffed pink duck. She again permitted him to touch her crotch several times through her clothes and four or five times inside her clothes. Lori Ann's baby-sitter, seeing the bicycle outside appellant's garage, approached the darkened interior and Lori Ann hurried out, "all nervous and everything." Lori Ann explained that the man next door

---

[1] All statutory references hereinafter are to the Penal Code unless otherwise specified.

gave her the animal and that it was "O.K." because he had given her other animals. When Lori Ann's mother returned home, Lori Ann told her appellant touched her. Appellant claimed he was with his wife and mother-in-law during the times in question.

## DISCUSSION

1. *Section 1203.066, Subdivision (a)(3) Not Void for Vagueness.*

Section 1203.066, in pertinent part, provides that: "(a) Notwithstanding Section 1203, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, nor shall a finding bringing the defendant within the provisions of this section be stricken pursuant to Section 1385 for, any of the following persons: . . . (3) A person convicted of a violation of Section 288 and who was a stranger to the child victim or made friends with the child victim for the purpose of committing an act in violation of Section 288, unless the defendant honestly and reasonably believed the victim was 14 years old or older."

Appellant contends section subdivision (a)(3) is unconstitutionally void for vagueness because it offers no sufficient guidelines or standards concerning what acts of the defendant or what other evidence would constitute "making friends." ■ The "void for vagueness" doctrine requires that a penal statute define the criminal offense with sufficient particularity that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. (*Kolender* v. *Lawson* (1983) 461 U.S. 352, 357 [75 L.Ed.2d 903, 909, 103 S.Ct. 1855]; see also *People* v. *McCaughan* (1957) 49 Cal.2d 409, 414 [317 P.2d 974].)

A challenged statute will not pass constitutional muster if its terms are " 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " (*People* v. *Superior Court* (*Engert*) (1982) 31 Cal.3d 797, 801 [183 Cal.Rptr. 800, 647 P.2d 76].) In analyzing a statute, we look first to the statutory language, and if ambiguous, then to its legislative history, and finally to the California decisions construing the statutory language. (*Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238, 246 [158 Cal.Rptr. 330, 599 P.2d 636].)

The trial court granted a motion under section 1118, and deleted any reference in the jury instructions to the "who was a stranger to the child victim" theory. ■ Consequently, we are called upon to determine only whether the language "made friends with the child victim for the purpose of committing an act in violation of section 288" is unconstitutionally vague.

"Friends" is a common term with a variety of connotations. Webster's Third New International Dictionary (1961) page 911 defines friend as "one that seeks the society or welfare of another whom he holds in affection, respect, or esteem." Its synonyms are "acquaintance, intimate, confidant." To "make friends with" is defined as "to become friendly with: establish friendly relations with." (*Ibid.*) The dictionary further tells us that the word "friend" applies to a person one has regarded with liking. (*Ibid.*)

Appellant cites judicial interpretations of the term from other jurisdictions to bolster his claim of vagueness: "undefinable relations which vary in degree from the greatest intimacy to an acquaintance more or less casual." (*United States Trust Co. of Newark* v. *Montclair T. Co.* (1943) 33 A.2d 901, 904 re use of the word "friends" in a will provision; " 'one that seeks the society or welfare of another whom he holds in affection, respect or esteem or whose companionship and personality are pleasurable.' " The court listed synonyms as "acquaintance," "intimate," and "confidant." (*Sioux Associates, Inc.* v. *Iowa Liquor Control Com'n.* (1965) 257 Iowa 308 [132 N.W.2d 421, 426] where the court, quoting Webster's Third New International Dictionary, held that members of a dancing club were friends within the meaning of the liquor statute that exempted occasional gathering of friends in private places.) From these examples appellant concludes that it is uncertain what degree of intimacy an individual juror would require to come within the statutory definition since "friends" has no precise meaning.

Courts have found the following common terms to be unconstitutionally vague in the context in which they were used: "common drunk" (*In re Newbern* (1960) 53 Cal.2d 786 [3 Cal.Rptr. 364, 350 P.2d 116]); "lewd or dissolute conduct" (*Pryor* v. *Municipal Court, supra,* 25 Cal.3d 238); "credible and reliable identification" (*Kolender* v. *Lawson, supra,* 461 U.S. 352); "treats contemptuously" (*Smith* v. *Goguen* (1974) 415 U.S. 566 [39 L.Ed.2d 605, 94 S.Ct. 1242]); "conscienceless, pitiless, unnecessarily torturous" (*People* v. *Superior Court (Engert), supra,* 31 Cal.3d 797); "rogues, vagabonds, loitering, common thiefs, habitual loafers" (*Papachristou* v. *City of Jacksonville* (1972) 405 U.S. 156 [31 L.Ed.2d 110, 92 S.Ct. 839]); "harsh, unkind" (*People* v. *McCaughan, supra,* 49 Cal.2d 409); "gang" (*Lanzetta* v. *New Jersey* (1939) 306 U.S. 451 [83 L.Ed. 888, 59 S.Ct. 618]).

Under well-settled rules, we must uphold a statute unless the unconstitutionality " 'clearly, positively and unmistakenly appears.' " (*In re Dennis M.* (1969) 70 Cal.2d 444, 453 [75 Cal.Rptr. 1, 450 P.2d 296].) Every statute should be construed with reference to the whole system of law of which it is a part. (*Moore* v. *Panish* (1982) 32 Cal.3d 535, 541 [186 Cal.Rptr. 475, 652 P.2d 32].) Nor need we consider " 'every conceivable situation which might arise' " under the statutory language so long as a

" 'reasonable and practical construction in accordance with the probable intent of the Legislature' " exists which encompasses the defendant's conduct. (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 492 [134 Cal.Rptr. 630, 556 P.2d 1081].) Difficulty in determining the outer boundaries of a statute does not allow a defendant to complain whose conduct falls clearly within its bounds. (*Ibid.*)

■ The language of subdivision (a)(3) indicates that the Legislature intended to preclude probation to offenders whose only contact with the victim was for the purpose of committing a violation of section 288 (a stranger) or, who already acquainted with the child, ingratiated himself to the child to lower the child victim's defenses to his advances "unless the defendant honestly and reasonably believed the victim was 14 years old or older." By making friends with the child victim for the purposes of committing the offense, the offender who already knows the child attempts to establish a feeling of liking in the victim to the extent the victim's fears or apprehension of physical closeness are allayed. In a sense, the offender performs fraud in the inducement.

We do not believe that "making friends . . . for the purposes of committing a violation of section 288" is so vague as to be misunderstood by a judge or jury. Here, no police officer is asked to subjectively interpret the meaning of "making friends" in order to decide whether to arrest a suspect. (See *People* v. *Superior Court* (*Caswell*) (1988) 46 Cal.3d 381 [250 Cal.Rptr. 515, 758 P.2d 1046].) Thus, determination of the criminality of the conduct does not depend upon the unfettered discretion of law enforcement. Moreover, it is not so vague that it permits " 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.' " (*Kolender* v. *Lawson, supra,* 461 U.S. 352, 358 [75 L.Ed.2d 903, 909] quoting *Smith* v. *Goguen, supra,* 415 U.S. at p. 575 [39 L.Ed.2d at p. 613].) Appellant was arrested for the substantive offense of violation of section 288, subdivision (a), lewd and lascivious acts upon a child. A finding of the allegation under subdivision (a)(3) presupposes that the fact finder makes a determination of guilt of the substantive offense. If the defendant would be acquitted on the substantive offense, the special allegation has no application.

Only when the jury determines that the defendant has committed the substantive offense does it then determine whether certain acts constitute "making friends" for the purpose of committing the criminal offense. Juries are routinely called upon to make similar determinations. Although a judge or jury might have differing views concerning the intensity of the relationship involved in a friendship, it is highly unlikely that they would disagree that to "make friends" for the purpose of committing the offense involves

establishing some degree of liking toward a person, as opposed to distrust or fear, to enable the offender to approach the victim for the purpose of committing the offense.

Moreover, it is the intent with which the act of making friends is accomplished which is the crucial element of the special allegation. ■ A statute will be upheld, despite the fact that the acts it prohibits are defined in vague terms, if it requires an adequately defined specific intent. (*People* v. *McCaughan, supra,* 49 Cal.2d 409, 414; see also *People* v. *Superior Court (Caswell), supra,* 46 Cal.3d 381.) ■ The statute in question requires the jury to find that the defendant had the specific intent to commit the substantive offense. (See *Colten* v. *Kentucky* (1972) 407 U.S. 104, 109-110 [32 L.Ed.2d 584, 589-590, 92 S.Ct. 1953] where the Supreme Court upheld a disorderly conduct statute because of the requirement of intent to cause inconvenience and annoyance.) We do not find the statute unconstitutionally vague.

2. *No Denial of Equal Protection.*

■ Appellant contends he was denied equal protection because a person who "made friends" with a child to commit nonforcible molestation shall be denied probation, while a person who did not make friends with the child prior to the molestation is eligible for probation. He contends that this distinction has no rational basis since the legislative concern in enacting the statutes was that probation not be granted to pedophiles, or fixated offenders considered not amenable to treatment and thus a greater threat to the community. Appellant oversimplifies the statutory intent.

■ The legislative history of the statute as well as the historical circumstances of its enactment may be considered in determining the intent of the Legislature. (*People* v. *Jeffers* (1987) 43 Cal.3d 984, 993 [239 Cal.Rptr. 886, 741 P.2d 1127].)[2] ■ At a hearing of the Joint Committee for Revision of the Penal Code (1979-1980 Reg. Sess.), witnesses including police officers, psychologists, deputy district attorneys, victims of sex offenses, and leaders of organizations concerned with problems of sex offenses against children testified to the complex problem of sexual abuse: "Several of the witnesses drew a distinction between offenses of pedophilia and incestuous or intrafamily offenses. [Hearing on Child Molestation by J. Com., (Dec.

---

[2] Respondent provided the court and appellant with copies of documents from the state archives pertaining to the legislative history of Senate Bill No. 586 and Penal Code section 1203.066. Respondent has not requested we take judicial notice of these materials, some of which are letters to the Governor in support of Senate Bill No. 586; and we have not relied upon them in this opinion. The legislative history to which we refer is set forth in *People* v. *Jeffers.*

16, 1980) pp. 31, 139, 162, 167-168, 172.] A pedophile or fixated offender was defined as a man (there are virtually no female pedophiles) who throughout life is sexually attracted exclusively to children, usually boys, within a particular age range. [ ] Incestuous or intrafamily offenses are committed by regressed offenders, men who are sexually attracted to adult women but who, for a variety of reasons, have engaged in sexual relations with a child, usually a girl. [ ] [¶] The Joint Committee was told that attempts to treat and rehabilitate pedophiles have been unsuccessful and that mandatory prison terms are appropriate for this group of offenders. [ ] Regressed offenders, on the other hand, have been successfully rehabilitated and mandatory prison terms are not necessary for protection of the community. [ ] Successful treatment of the regressed or intrafamily offender requires that he be prosecuted and receive punishment in some form, such as a jail term [ ] but mandatory prison terms are undesirable 'because more of the witnesses would be reluctant to give the kind of testimony that would put their companion, their father, or . . . their "beloved friend" in prison.' [ ]" (43 Cal.3d 984, 994.)

As indicated in *Jeffers*, following these hearings, Senate Bill No. 586 was introduced concerning mandatory prison terms for persons committing sex offenses against children. At the Joint Committee hearings on this and five other bills on April 10 and 24, 1981, relating to mandatory sentencing, members expressed concern regarding the problem of the intrafamily molest which often generates feelings of guilt and responsibility in the victim if the offender is incarcerated. (43 Cal.3d at pp. 996-997.) "Concern was also expressed at the hearings that a distinction be drawn, for purposes of probation eligibility, between those described as intrafamily or 'regressed' offenders, who stand some chance of rehabilitation, and the pedophiles or 'fixated' offenders, who were considered not amenable to treatment and a greater threat to the community." (*Id.*, at p. 997.)

The final version of Senate Bill No. 586 was the result of several amendings. A perusal of the laundry list which renders an offender statutorily ineligible for probation in section 1203.066 reveals that it is almost all-inclusive. The bill in its final form exempts from mandatory prison sentence under the provisions of section 1203.066 only those nonviolent offenders who come within the intrafamily definition of the "victim's natural parent, adoptive parent, stepparent, relative, or is a member of the victim's household who has lived in the household" where the court makes certain other requisite findings. (See § 1203.066, subds. (c)(1)-(4); see also legislative history to Stats. 1981, ch. 1064; Sen. Bill No. 586.)

It appears that the only other offenders eligible for probation following a conviction of section 288, subdivision (a) are those who have no prior

convictions for similar offenses, have not used a weapon in the commission of the offense, have not used force, violence, duress, menace, or fear of immediate and unlawful bodily injury in the commission of the offense, are not convicted of committing a violation of section 288 on more than one victim at the same time or in the same course of conduct, did not occupy a position of "special trust," did not have "substantial sexual conduct" with a victim under age 11, did not use obscene matter in committing a violation of section 288, and were not strangers to the victim or did not make friends with the victim for purposes of committing the offense. In other words, the only nonrelative-household member probation-eligible offender is someone who engaged in nonsubstantial nonviolent sexual conduct with a child under the age of 11 years or substantial nonviolent sexual conduct with a child between the ages of 11 and 14, and knew the child victim at the time, but did not further ingratiate himself with the child or become friendly for the purpose of committing the sexual conduct.

■ Although the guaranties of equal protection embodied in the Fourteenth Amendment of the United States Constitution and article I, section 7 of the California Constitution prohibit the state from arbitrarily discriminating among persons subject to its jurisdictions, the state may make distinctions between different groups of individuals so long as the classifications created bear a rational relationship to a legitimate public purpose. (*People* v. *Gregori* (1983) 144 Cal.App.3d 353, 358 [192 Cal.Rptr. 555].)

■ The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317 [601 P.2d 549].) However, the equal protection guaranties of the Constitution do not require that persons convicted of different crimes be treated equally or that the law ignore the circumstances of a crime's commission in imposing punishment. (*People* v. *Acevedo* (1985) 166 Cal.App.3d 196, 205 [212 Cal.Rptr. 328].)

■ Appellant contends that subdivision (a)(3) would operate to deny probation to anyone who has "acted friendly" with a child even years before the molest, and even in an intrafamily molest case. He is mistaken. "Acting friendly" does not bring one within the parameters of subdivision (a)(3); it is the act of making friends *for the purpose of committing the molestation*. He contends that there is no increased moral culpability between the molester who is "friendly" to the child prior to the molest over a molester who was not "friendly." The denial of probation based on making friends, he continues, is inconsistent with the general California law "which denies

probation primarily to those who commit violent crimes, serious drug offenses or recidivist offenses." (*People* v. *Acevedo, supra,* 166 Cal.App.3d 196, 204.)

We disagree. Even though the statute is inartfully drafted and not a model of clarity, the Legislature could rationally decide that one already acquainted with the child who "makes friends with the child victim for the purpose of committing a violation of section 288" is more morally culpable and potentially dangerous to the child victim than the regressed or "situational" offender who also knows the child victim. The former intentionally sets out to establish a closer rapport with the child and to disarm the child's defenses for the express purpose of committing the offense. The latter does not. That some regressed or situational offenders may come within the statutory prohibition because their conduct in a particular instance is identical to that of a fixated pedophile does not cause a denial of equal protection. It is the conduct that causes the punishment, not the particular psychological definition of the offender. (Information produced at the Joint Committee hearings cited in *Jeffers* reveals that the fixated pedophile usually engages in nonviolent sexual conduct with the child victims he seeks out.) Perhaps in the future the Legislature may refine the statutory scheme with greater specificity toward only offenders it deems eligible for probation and capable of rehabilitation rather than by dreaming up every possible factual permutation by which to exclude them.

Nonetheless, appellant's conduct is squarely within the proscribed activity; he enticed the child into his garage with the promise of toys for the explicit purpose of committing the offense. Appellant is not similarly situated with offenders who do not "make friends" with the child victim for the purpose of committing the offense.

3. *No Instructional Error Concerning Section 1203.066.*

The trial court instructed the jury as follows: "If you find that the defendant made friends with the child for the purpose of committing an act in violation of section 288 (a) of the Penal Code, you are to find that the special allegation is true. [¶] Before making a finding that the special allegation is true, you must be convinced beyond a reasonable doubt of the following: [¶] 1. The defendant acted with the intention to make friends with the complaining witness. [¶] 2. At the time of the defendant's acts in making friends with the complaining witness the defendant had the specific intent to form a friendship with the complaining witness for the purpose of committing an act in violation of Penal Code section 288 (a). [¶] 3. The defendant did, in fact, make friends with the complaining witness prior to the act which is alleged to constitute the violation of Penal Code section 288 (a). [¶] If you find that the defendant made friends with the complaining

witness prior to a specific intention or plan having arisen in the defendant's mind, you may not find the special allegation to be true. [¶] If you have a reasonable doubt as to any of the elements of the special allegation as set forth above, you must give the benefit of the doubt to the defendant, and find the special allegation to be not true."

■ Appellant contends the trial court should have given a definition of "making friends," and whether the "friendship" formed had to be mutual, or whether the acts constituting making friends had to be independent of the occasion of the molest. He asserts that failure to so instruct was prejudicial as any restrictive instructions would have benefited him. We disagree.

The trial court does not err in refusing to define words which are of common usage and have no special meaning. (*People* v. *Stewart* (1979) 89 Cal.App.3d 992, 998-999 [153 Cal.Rptr. 242].) Ordinary words and phrases in statutes require no definition because they are presumed to be understood by jurors. (*Id.,* at p. 999.) Moreover, the wording of the instruction protected against the very vice of which appellant complains—that the jury would find the allegation true based upon some prior conduct unrelated to the offense. There was no error.

We also reject appellant's claim of insufficient evidence to support the special allegation.

4.  *No Cruel and Unusual Punishment.*

■ Appellant contends the court was unconvinced of its jurisdiction to make an analysis pursuant to *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921] and *People* v. *Superior Court (Beasley)* (1984) 159 Cal.App.3d 131 [205 Cal.Rptr. 413] regarding whether the punishment imposed was cruel and unusual under *People* v. *Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697]. Again, we disagree. Appellant informed the trial court at sentencing that he was introducing psychological evidence concerning appellant for the purpose of a *Dillon* argument. In *Dillon,* the defendant was 17 years old at the time of the offense, and immature, and the coperpetrators received slight punishment compared to Dillon's sentence of life without possibility of parole. Additionally, the jury recommended leniency at the time they delivered their verdict. The Supreme Court rejected a challenge to the felony-murder rule but found the punishment imposed cruel and unusual under the California Constitution (art. I, § 17) because of the exceptional circumstances in that case. (34 Cal.3d 441, 489.)

The facts presented here were not exceptional as they were in *Dillon*. Nevertheless, although the trial court stated it had no discretion to grant

probation, it still showed leniency by imposing the mitigated term. Absent contrary evidence, we must assume the trial court properly followed the law. (See *People* v. *Garcia* (1987) 195 Cal.App.3d 191, 198 [240 Cal.Rptr. 703]; *People* v. *Campo* (1987) 193 Cal.App.3d 1423, 1432-1433 [239 Cal.Rptr. 44].) Probation is a privilege and not a right. (*People* v. *Almodovar* (1987) 190 Cal.App.3d 732, 742 [235 Cal.Rptr. 616].) Denial of probation does not constitute cruel or unusual punishment. (*Ibid.*) A mandatory prison sentence for felony child molest is not "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch, supra,* 8 Cal.3d 410, 424, fn. omitted.)

The judgment is affirmed.

Gilbert, J., and Abbe, J., concurred.

A petition for a rehearing was denied November 22, 1988, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied February 16, 1989.