[No. F022177. Fifth Dist. Feb. 7, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
HILTON FORBES, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the Statement of Facts and sections I, II, IV and V.

COUNSEL

Patricia L. Reber, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Michael J. Weinberger and Robert D. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**DIBIASO, Acting P. J.**—We hold in part that the word "stranger" in Penal Code section 1203.066 has no technical meaning peculiar to the law and

therefore that the trial court did not err in refusing an instruction which purported to define the word.

## STATEMENT OF THE CASE

On February 23, 1994, an information was filed in Stanislaus County Superior Court charging appellant Hilton Forbes[1] with commission of a lewd or lascivious act on a child under the age of 14 (Pen. Code,[2] § 288, subd. (a), count I) and penetration with a foreign object of the genital opening of a child under the age of 14 and more than 10 years younger than the defendant (§ 289, subd. (j), count II). As to each count, it was alleged appellant was a stranger to the victim within the meaning of section 1203.066, subdivision (a)(3). Appellant pleaded not guilty and denied the special allegations.[3]

Jury trial began on May 16, 1994. On May 18, appellant was convicted of both charges and the special allegation was found to be true. His subsequent motion for a new trial was denied, and he was sentenced to six years in prison. This timely appeal followed.

## STATEMENT OF FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

I., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III. *Failure to Define "Stranger"*

▉▉▉ In a novel argument, appellant contends the trial court erred by failing to give his requested instruction setting forth a definition of the word "stranger" in conjunction with the section 1203.066 allegation of count I.[11] Appellant says "stranger" has numerous meanings, many of which are contradictory. Relying on settled principles of statutory construction, he

---

[1] Appellant's true name is apparently Forbes.

[2] All statutory references are to the Penal Code unless otherwise stated.

[3] The section 1203.066 allegation was subsequently dismissed as to count II.

*See footnote, *ante*, page 599.

[11] Subdivision (a)(3) of section 1203.066 prohibits the granting of probation to "[a] person who is convicted of a violation of Section 288 or 288.5 and who was a stranger to the child victim or befriended the child victim for the purpose of committing an act in violation of Section 288 or 288.5, unless the defendant honestly and reasonably believed the victim was 14 years of age or older."

asserts the trial court was obligated to resolve the ambiguity in his favor. Since some of the dictionary definitions of "stranger" favor appellant's position that he was *not* a stranger to Cynthia T., the victim, he concludes that "the trial court should have instructed with a definition that was reasonably favorable to appellant."

The definition in appellant's requested instruction read: "A stranger is a person with whom one is unacquainted, such as an intruder into the house of another." During a discussion of this instruction, the trial court noted that the dictionary contained more than one definition of "stranger" and asked, "[W]hich definition are we going to get?" This ensued:

"MR. SMITH [defense counsel]: I think it's a rule of statutory interpretation that you have to interpret as favorably for the defendant as possible.

"THE COURT: Well, no, you're asking for—to pick a definition out of Webster's many definitions that's the most favorable to the defendant, the law doesn't say you have to do that.

"MR. SMITH: I believe the law does say that.

". . . . . . . . . . . . . . . . . . . . . . . .

"THE COURT: I think you have to give a complete definition of the term.

"MR. SMITH: Well, then, I think you have to give a complete definition.

"THE COURT: So how about saying that, 'Stranger, outsider or newcomer, other person not known or familiar to one'?

"MR. MANER [prosecutor]: Your Honor —

"THE COURT: That's—fits both of you.

"MR. MANER: Maybe we're creating a problem that we don't have to. Maybe a better solution is to wait 'til they ask and then do it. They may not ask. Also, Your Honor, I've got case law that says that with words of generally common knowledge —

"THE COURT: Yeah, I don't need—why do we even need to define 'stranger'?

"MR. MANER: We don't, that's my point.

"THE COURT: I don't think there's any reason to.

"MR. MANER: If they ask, we'll tell them, let's not create a problem until it happens.

"MR. SMITH: I'm asking for the instruction, I believe it's called for in this case.

"THE COURT: A stranger is a term, a common term, I mean, everyone knows what a stranger is. You can argue that he wasn't a stranger. And Mr. Maner can argue that he was a stranger. The, the—I mean, based on the way the testimony goes, it could be found that he was a stranger. On the other hand, I suppose you could argue that because she had met him that night he wasn't a stranger. I don't think there's any need to define the term to the jury in this case. I think it's just misleading, is what I think. So I'm going to refuse that instruction."

The prosecution presented evidence that Cynthia was introduced to appellant when Terry Long brought appellant to her house on the evening in question. She had not met appellant before and did not spend time with him then, because she was playing a video game in a different room.[12] During his cross-examination of appellant, the prosecutor asked whether appellant had seen Cynthia before that night. Appellant said he had never seen her before. When the prosecutor asked, "Was she a stranger to you?" appellant responded, "Yes." The prosecutor subsequently argued to the jury that appellant was a stranger to Cynthia, as they had not met beforehand. The prosecutor also told the jury, "So if you convict him of Count I, you ask yourselves, 'Was he a stranger?' Everybody agrees, he's a stranger. That's an easy determination to make. He says it, she says it, Long says it, why else would he introduce her to the guy." Defense counsel did not address the point in his argument.

After the jury was excused for deliberations, defense counsel again requested that the court give appellant's proposed instruction defining "stranger." The court refused. It pointed out that "stranger" is a common word and that laypersons know what a stranger is. It also found appellant's definition to be too narrow. The court offered to "take a look at it" if appellant were to propose a broader definition, but noted that appellant had not submitted anything else.

■ It is the policy of this state to construe a penal statute as favorably to the defendant as its language and the circumstances of its application may

---

[12]It is unclear how separate the rooms actually were. However, it is undisputed that Cynthia's attention was on her new game and that, beyond the introduction, she had virtually no contact with appellant.

reasonably permit; just as in the case of a question of fact, the defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in the statute." (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) However, "the rule does not 'require[] that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scope—nor does any rule require that the act be given the "narrowest meaning." It is sufficient if the words are given their fair meaning in accord with the evident intent of [the legislative body].' " (*People* v. *Anderson* (1987) 43 Cal.3d 1104, 1146 [240 Cal.Rptr. 585, 742 P.2d 1306], quoting *United States* v. *Raynor* (1938) 302 U.S. 540, 552 [82 L.Ed. 413, 420, 58 S.Ct. 353].)

 In our estimation, the rule likewise does not mean that commonly understood terms must be defined for a jury. "The law is settled that when terms have no technical meaning peculiar to the law, but are commonly understood by those familiar with the English language, instructions as to their meaning are not required." (*People* v. *Anderson* (1966) 64 Cal.2d 633, 639 [51 Cal.Rptr. 238, 414 P.2d 366].)

Myriad cases address whether certain terms and phrases must be defined for the jury. (See, e.g., *People* v. *Estrada* (1995) 11 Cal.4th 568, 578 [46 Cal.Rptr.2d 586, 904 P.2d 1197] [" 'reckless indifference to human life,' " as used in § 190.2, has no technical meaning peculiar to law, so trial court has no sua sponte duty to define]; *People* v. *Rowland* (1992) 4 Cal.4th 238, 270-271 [14 Cal.Rptr.2d 377, 841 P.2d 897] ["while engaged in" need not be defined for purposes of felony-murder special circumstance as phrase is commonly understood and not used in technical sense]; *People* v. *Williams* (1988) 45 Cal.3d 1268, 1314-1315 [248 Cal.Rptr. 834, 756 P.2d 221] [where "conspiracy" is used in common and nontechnical sense, no definition is required]; *People* v. *Anderson, supra,* 64 Cal.2d at p. 640 ["force and fear" in robbery "have no technical meaning peculiar to the law and must be presumed to be within the understanding of jurors"]; *People* v. *Chavez* (1951) 37 Cal.2d 656, 668 [234 P.2d 632] ["perpetrate" has no technical meaning peculiar to law, so no definition required]; *People* v. *Shoals* (1992) 8 Cal.App.4th 475, 489-490 [10 Cal.Rptr.2d 296] ["opening" and "maintaining" a place for unlawful sale etc. of controlled substances for purposes of Health & Saf. Code, § 11366 has technical meaning and must be defined]; *People* v. *Cantrell* (1992) 7 Cal.App.4th 523, 543-545 [9 Cal.Rptr.2d 188] ["rectal area" need not be defined in prosecution under § 311.4 as it is not a technical term requiring special instruction; "What the rectal area would encompass is something for the jury to determine based on ordinary experience and general knowledge"]; *People* v. *Smith* (1987) 188 Cal.App.3d 1495,

1513-1514 [234 Cal.Rptr. 142] ["viable" has specialized meaning in context of fetal murder case and, hence, definition required];[13] *People* v. *Pitmon* (1985) 170 Cal.App.3d 38, 52 [216 Cal.Rptr. 221] ["duress" for purposes of § 288, subd. (b) has no technical meaning and can be commonly understood, so no definition required; "force" must be defined because it has a specialized meaning not readily known by average lay juror]; *People* v. *Kimbrel* (1981) 120 Cal.App.3d 869, 872 [174 Cal.Rptr. 816] ["great bodily injury" is commonly understood phrase]; *People* v. *Stewart* (1979) 89 Cal.App.3d 992, 999 [153 Cal.Rptr. 242] ["amenable to treatment" requires no definition in mentally disordered sex offender proceeding].) All of these cases turn not on whether the term or phrase at issue has more than one meaning, but on whether the term or phrase has a "technical meaning peculiar to the law." (*People* v. *Anderson, supra,* 64 Cal.2d at p. 640.)

We are cited to no authority, nor are we aware of any, which holds that the word "stranger" has a technical meaning in law such that it must be expressly defined for the jury. We conclude that, at least when used in the context of a section 1203.066 allegation, "stranger" is a commonly understood term and the jury therefore need not be instructed on its definition.[14]

*People* v. *Thompson* (1988) 205 Cal.App.3d 871 [252 Cal.Rptr. 698] is helpful. In that case, the defendant was found to have made friends with the victim for the purpose of molesting her, within the meaning of section 1203.066, subdivision (a)(3). Among other things, the defendant claimed the trial court should have given the jury a definition of the words "making friends." The Court of Appeal disagreed: "The trial court does not err in refusing to define words which are of common usage and have no special meaning. [Citation.] Ordinary words and phrases in statutes require no definition because they are presumed to be understood by jurors. [Citation.]" (*Thompson, supra,* at p. 883.)

Appellant seeks to distinguish *Thompson* on the grounds that "making friends" is not an ambiguous term, and jurors would be expected to know its meaning. By contrast, he says, "stranger" has numerous definitions, some of which are favorable to him and some of which are not. However, an examination of Webster's Third New International Dictionary (1986) page 911 reveals that the word "friend" has numerous meanings as well, not all of which would be particularly favorable to a defendant facing a section

---

[13]*Smith* was overruled on other grounds in *People* v. *Davis* (1994) 7 Cal.4th 797, 805 [30 Cal.Rptr.2d 50, 872 P.2d 591].

[14]We need not, and do not, consider whether an instruction defining "stranger" would be required if a jury expressed confusion as to the meaning, or requested a definition, of the word.

1203.066, subdivision (a)(3) allegation. As the court noted in *Thompson*, " '[f]riends' is a common term with a variety of connotations." (*People* v. *Thompson, supra,* 205 Cal.App.3d at p. 877.) Thus, the fact that "stranger" can be defined in more than one manner (see Webster's New Internat. Dict., *supra,* p. 2256) does not, without more, require it to be explained to a jury.

In dealing with the contention that subdivision (a)(3) of section 1203.066 was unconstitutionally vague, the *Thompson* court stated, "The language of subdivision (a)(3) indicates that the Legislature intended to preclude probation to offenders whose only contact with the victim was for the purpose of committing a violation of section 288 (a stranger) or, who already acquainted with the child, ingratiated himself to the child to lower the child victim's defenses to his advances . . . ." (*People* v. *Thompson, supra,* 205 Cal.App.3d at p. 878.) The court also noted: "[T]he only nonrelative-household member probation-eligible offender is someone who engaged in nonsubstantial nonviolent sexual conduct with a child under the age of 11 years or substantial nonviolent sexual conduct with a child between the ages of 11 and 14, and knew the child victim at the time, but did not further ingratiate himself with the child or become friendly for the purpose of committing the sexual conduct." (*Id.* at p. 881.)

Appellant maintains he falls within the foregoing definition of probation-eligible offenders. However, but for a fortuitous, momentary introduction to Cynthia, he was a stranger to her and admitted as much on the witness stand. We do not believe the Legislature intended to make probation-eligible someone who, like appellant, is brought into the child's home, introduced in passing, and then has virtually no further contact with the victim except for the molestation, while barring from probation eligibility a person who is brought into the victim's home and presence but who is never formally introduced to the child. We will not strain the statute to reach such a result.

The fact a word has more than one meaning, some of which are arguably contradictory, does not, without more, mean it is not a commonly understood term and therefore must be defined for the jury. We recognize that appellant is not arguing the trial court was under a sua sponte obligation to define "stranger." As the California Supreme Court has held, however, a trial court is not required to instruct on the meaning of a commonly understood term and does not err in refusing a requested instruction which attempts to define such a word or phrase. (*People* v. *Malone* (1988) 47 Cal.3d 1, 54-55 [252 Cal.Rptr. 525, 762 P.2d 1249].)

IV., V.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Thaxter, J., and Buckley, J., concurred.

---

*See footnote, *ante*, page 599.