Opinion
 

 HUFFMAN, J.
 

 A jury found Billy Cornell McCleod
 
 [2]
 
 guilty of failing to reregister as a sex offender in writing, within 10 days of “any change in his residence address, in violation of Penal Code[
 
 3
 
 ] section 290[, subdivision] (a) (g)(2).”
 
 [4]
 
 In a bifurcated court trial, the court found true McCleod had previously suffered a serious felony within the meaning of the three strikes law (§ 667, subds. (b)-(i)) and had served a prior prison term (§ 667.5, subd. (b) ). The court sentenced McCleod to a total five-year term, consisting of a two-year midterm doubled to four years under the three strikes law, plus a consecutive one-year term for the prior prison enhancement.
 

 McCleod appeals, contending the trial court prejudicially instructed the jury on the elements of a violation of section 290 by failing to define the term “residence” and by misinstructing on the reporting requirement of subdivision (f) of that section, that the court abused its discretion by permitting the jury to continue deliberations while the court and counsel endeavored to define “residence” in response to a jury question in violation of section 1138, that there was insufficient evidence to support his conviction for failing to reregister within the meaning of section 290, subdivision
 
 *1210
 
 (f), and that remand for resentencing is necessary so the trial court may exercise informed discretion under
 
 People
 
 v.
 
 Superior Court
 
 (Romero) (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628].
 

 We shall conclude the trial court properly instructed the jury on the elements required for conviction of a section 290, subdivision (f) offense, that McCleod waived any possible section 1138 violation, that sufficient evidence supports McCleod’s conviction in this case, and remand under
 
 Romero
 
 is not warranted on this record.
 

 Factual and Procedural Background at Trial
 

 The Prosecution Case
 

 It was stipulated that McCleod “is required to register as a sex offender with the chief of police of the city in which he’s domiciled pursuant to Penal Code section 290” and that he “is required to register as such because he was convicted of an offense which required registration as a sex offender pursuant to [that section].”
 

 According to police records, McCleod had listed his San Diego residence address as 4180 30th Street on March 15, 1991. On January 26, 1994, he changed his residence address to apartment No. 15 at 4218 49th Street, and there had been no written notification of any change of residence address since that time.
 

 A San Diego police detective testified that if a person required to register under section 290 moves within the City of San Diego, that person is required to notify the San Diego police within 10 days “of his [or her] new address in writing.” The detective explained the difference between section 290’s registration requirement to register within 14 days of moving to a new city or jurisdiction and the additional requirement of reregistering whenever there is a change of address within the same jurisdiction or city, which then requires the notification of the change to be in writing with the offender’s signature within 10 days. The detective noted that a specific form provided to people who are required to register under section 290 for registration of “change of address” also “informs [that person] of all the legalities and technicalities of [the] registration requirements.”
 
 [5]
 
 McCleod had filed his address change to the apartment No. 15 address twice: once on the specific
 
 *1211
 
 change of address form and again in September 1994 on the standard section 290 registration form.
 

 The property manager of the apartment complex testified McCleod and his mother lived in apartment No. 15 from about January 4, 1994, until August 21,1995, when they were evicted. The manager had inspected the apartment on August 21 for cleanliness and damage and found it completely vacant. The manager, who visits the complex five days a week, although rarely at night, said no one has lived in or moved into apartment No. 15 since its vacancy on August 21, 1995.
 

 About 6:45 a.m. on September 1, 1995,
 
 [6]
 
 San Diego Police Officer Steven Skinner contacted McCleod in an alley near 4800 Orange Avenue. McCleod was pushing a barbecue he claimed he was taking from his girlfriend’s to his mother’s home. In response to questions, McCleod gave Skinner his correct name and told him his home address was 4161 45th Street. The next day Skinner ran a computer check on the information received from McCleod and discovered McCleod was a “290 sex registrant” with the apartment No. 15 address listed as his last known registered address.
 

 In an attempt to locate McCleod, Skinner went that same day to the apartment No. 15 address, sometime between the early morning and the early afternoon. He received no response to his knocks on the door and saw through a window there was no furniture in the front room. Skinner did not obtain any information as to where McCleod was currently living from either the neighbors or the manager.
 

 Skinner next tried to find the address McCleod had given him, but discovered it did not exist. Skinner did not find McCleod living in that area and did not see him when he walked around that neighborhood.
 

 At 4 a.m. on October 13, 1995, two other San Diego police officers contacted McCleod near the 4800 block of Orange Avenue. In response to questioning, McCleod told the officers his correct name and gave them 4166 49th Street as his address. Although one officer identified the address on the field interview report as a new sex registration address, McCleod did not tell the officers he was a sex offender registrant. Even though the officers had some information about McCleod before they contacted him, they did not arrest him at that time because a warrant check did not turn up his name. The
 
 *1212
 
 next evening when the officers came on duty, they drove to the address McCleod had given them and arrested him.
 

 The Defense
 

 McCleod testified in his own defense. He acknowledged he was required to register as a sex offender and that he had done so more than once. He had registered first for the 30th Street address and then for the apartment No. 15 address. He had moved to the address where he was arrested on October 8, 1995.
 

 McCleod admitted he had been evicted from apartment No. 15, along with his mother, on August 21,1995, but claimed he slept there until he moved on October 8. McCleod testified he stayed overnight in the back room of apartment No. 15 because he did not want the apartment manager to see him and one could look in the window into the front room. He used a key that he had not turned in at the time of the eviction to get into the apartment. He stayed there because he had no place to go while he tried to find places for his mother and his girlfriend, who was also being evicted from the same complex.
 

 McCleod claimed he gave the police his new address when he was contacted on October 13, 1995. Although he thought he had about five more days to register the change of address from his October 8 move, the officers told him to register his new address within fourteen days. The officers came to his house at midnight the next day and arrested him.
 

 On cross-examination, McCleod admitted he had suffered a prior felony offense, that he knew he had a lifetime requirement to register as a sex offender because of such conviction,
 
 [7]
 
 that apartment No. 15 was not his legal residence, and that he was trespassing when he slept there after the eviction. He claimed he sometimes forgot about the registration requirement, explaining that circumstances like the eviction caused him much confusion because he was trying to find places to live for his mother and girlfriend as well as himself.
 

 During the time between the eviction and moving into a house on October 8, 1995, McCleod kept some clothes at his girlfriend’s apartment and his large items at his mother’s place. He slept at his girlfriend’s apartment twice a week and at apartment No. 15 the other nights. In the daytime he was “hanging on the street.”
 

 
 *1213
 
 McCleod denied telling Skinner on September 1, 1995, that he was living at the 4161 45th Street address. He claimed the address, which he probably mixed up, was his mother’s new address and the place where he was taking the barbecue when Skinner contacted him. He did not have any contact with Skinner when Skinner came to apartment No. 15 on September 2, 1995. McCleod told the police officers on October 13, 1995, that he had forgotten to register a change of address and believed he no longer needed to do so because he had just been paroled.
 

 On recross-examination, McCleod conceded he “wasn’t actually living” in apartment No. 15, but was just sleeping there “occasionally.” He admitted that if a police officer came to the door of apartment No. 15 while he was there, he would not answer the door; he did not want anyone to know he was living there.
 

 Further Trial Proceedings
 

 Jury instructions were discussed outside the jurors’ presence. It was agreed to give an instruction prepared by the prosecutor and modified at the request of defense counsel for the alleged section 290 crime, along with a definition of “willfully” to fully define that crime. At the conclusion of all testimony, the court instructed the jury on the current crime as follows: ’’Defendant is accused in Count One of the information of having violated Penal Code section 290 [, subdivision (f)], a crime. [^0 Every person who is required to register as a sex offender pursuant to Penal Code section 290 and willfully fails to inform in writing, within [10] days, the law enforcement agency or agencies with whom he last registered of any change of his residence address is guilty of a violation of Section 290 [, subdivision (f)] of the Penal Code, a crime. [U In order to prove such crime, each of the following elements must be proved: [H 1. A person is required to register as a sex offender pursuant to Penal Code section 290; and [<jU 2. Such person changed his residence address; and [H 3. Such person willfully failed to inform in writing, within [10] days, the law enforcement agency or agencies with whom he last registered of any change of residence address.”
 

 The jury was further instructed under CALJIC No. 1.20 that: ’’The word ‘willfully’ when applied to the intent with which an act is done or omitted means with a purpose or willingness to commit the act or to make the omission in question. The word ‘willfully’ does not require any intent to violate the law, or to injure another, or to acquire any advantage.”
 

 At the completion of the jury instructions, counsel gave closing arguments. The prosecutor argued that because the purpose of the registration
 
 *1214
 
 statute was to “keep track of . . . people[,]” McCleod changed his address by default when he was evicted from apartment No. 15 and failed to register a new address where he could be located by law enforcement. The prosecutor asserted the section 290 elements of “willfull[] failure] to inform in writing, within 10 days” were satisfied by McCleod giving Skinner a nonexistent address on September 1, 1995, and McCleod merely telling the other officers of his new address on October 13, 1995. The thrust of McCleod’s argument was that there was no conclusive evidence he did not continue to spend his nights at apartment No. 15 from the time of the eviction until he moved into a house on October 8, 1995, and that when he was contacted on October 13 he still had five days within which to register change of his residence address.
 

 Before the jury left to deliberate that afternoon at 3:07 p.m., one juror asked if questions to the court needed to be in writing. Receiving an affirmative reply from the court, the juror wrote out several questions, asking: “[!.] What is the legal definition of a person’s residence? [and 2.] Under PC 290, how would a person register if they became homeless?” The court advised the parties to consider these questions while the written instructions were being prepared to send into the jury room.
 

 Meanwhile, the court questioned another juror outside the presence of the other jurors about his observation of McCleod in handcuffs out of the courtroom. During this time the court received a second predeliberation note from yet another juror, asking: “question #1 [U Beginning Officer Skinner testimony [U Did he say in investigating address 4161 45th given to him by defendant Sept 1 4 a.m. not to be in existence? [^] Also [^Q #2. Defective]stated as of Jan 1995 registration by birthday?”
 

 The jury finally began deliberations about 3:35 p.m. without the written instructions. From 3:37 p.m. until 4:10 p.m. court recessed. Thereafter, the court and parties conferred about the submitted notes, with the court observing the notes had been provided before the deliberations began. After the jury was released at 4:29 p.m., the court indicated it would again take up the issue of the notes the next morning.
 

 At that time, the court proposed it tell the jury the birthday registration requirement was not applicable to this case and ask if the jury still wanted the other three questions answered. The bailiff interjected that the jurors had mentioned they wanted the answer to those questions and could not deliberate until they received the answers. The court then inquired as to whether there was any objection to just letting the jurors continue deliberating while the court and parties resolved the matter. No objection was made.
 

 
 *1215
 
 After some discussion, the parties agreed the proper procedure to handle the matter was to send the jury a note from the court asking whether they still wanted the four predeliberation questions answered. The court attached a copy of the questions to its note to the jury and continued working with counsel on answers to the four questions while they waited for a response. Within a short time, the jury replied they only wanted the definition of “residence” answered.
 

 During further discussion of various definitions of residence, defense counsel acceded to the court’s proposed commonsense definition based on that in Webster’s Dictionary, but objected to the prosecutor’s proposed addition that a residence is a place where a person is readily available for police surveillance at all times. Based on the law given to the jury and the procedure testified to by the detective, defense counsel expressed her view that a person can have multiple residences, büt only one domicile. Counsel suggested that: “[Residence is a common word that’s used. I see no reason why the jury can’t use their common sense in applying their own definition. I don’t think we should give them a long definition. Maybe that would simplify it. [U In fact, I think the Legislature thought it was a simple word because otherwise they would have given a definition as to what they think a residence is." The court agreed, but opined the jury should be given some answer because of their apparent confusion due to the possible issue of homelessness that could be inferred from the facts of this case.
 

 The bailiff interrupted further discourse on the wording of a definition for residence to advise the court the jury had reached a verdict. The court noted, “The record should reflect we have not sent in any response on the question, and that’s okay. We told them to keep deliberating. I guess they decided they didn’t need it.”
 

 The jury returned a verdict finding McCleod guilty as charged. The jury was not polled and there was no defense objection made regarding the verdict at that time or posttrial.
 

 Discussion
 

 I
 

 Jury Instructions
 

 In a lengthy multilevel discussion, McCleod contends the trial court misinstructed the jury on the requirements of section 290, subdivision (f) and on an element of that offense, thereby violating his due process rights.
 
 *1216
 
 Specifically, he argues the court had a sua sponte duty to define the term “residence” for a section 290, subdivision (f) conviction as the legal equivalent of “domicile.” He also asserts the court erroneously instructed the jury that section 290 requires a sex registrant to inform in writing the law enforcement agency or agencies with whom he last registered of “any change of residence address” when that section contains no such requirement. We conclude the trial court properly instructed the jury on the crime charged against McCleod.
 

 Although it is well established a court in fulfilling its duty to instruct on the “principles of law relevant to the issues raised by the evidence [citations]"
 
 (People
 
 v.
 
 Saddler
 
 (1979) 24 Cal.3d 671, 681 [156 Cal.Rptr. 871, 597 P.2d 130]) must be sure “the jurors are adequately informed on [that law] to the extent necessary to enable them to perform their function”
 
 (People
 
 v.
 
 Reynolds
 
 (1988) 205 Cal.App.3d 776, 779 [252 Cal.Rptr. 637]), it need only “give explanatory instructions when terms used in an instruction have a technical meaning peculiar to the law [citation]."
 
 (Ibid.)
 

 To determine whether a term in an instruction has such a technical legal meaning, one must look to the statutory language defining the alleged crime. Though the statute is to be construed “ ‘as favorably to the defendant as its language and the circumstances of its application may reasonably permit’ ”
 
 (People
 
 v.
 
 Forbes
 
 (1996) 42 Cal.App.4th 599, 603-604 [49 Cal.Rptr.2d 836]), this rule “ ‘does not “require[] that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scope—nor does any rule require that the act be given the ‘narrowest meaning.’ It is sufficient if the words are given their fair meaning in accord with the evident intent of [the legislative body].”’ [Citations.]”
 
 (Id.
 
 at p. 604.) Commonly understood terms need not be defined for the jury.
 
 (Ibid.)
 

 As noted above, the parties agreed that the court instructing the jury under CALJIC No. 1.20 and the specially drafted instruction tracking the language of section 290 for the subdivision (f) violation was sufficient to apprise the jurors of the elements necessary to find McCleod guilty of the alleged crime. Defense counsel did not seek further clarification or modification of the instructions. A problem arose only when the jury requested the legal definition of a person’s residence. In a position contrary to that taken at trial, McCleod now argues “residence” as used in section 290 is not a commonly understood term and has a technical meaning which is the same as that for “domicile."
 

 Although domicile and residence are often in the same physical location and the term residence has at times been construed and used as a synonym
 
 *1217
 
 for domicile, it has also often been noted that: “ '[D]omicile’ properly denotes the one location with which for legal purposes a person is considered to have the most settled and permanent connection, the place where he intends to remain and to which, whenever he is absent, he has the intention of returning but which the law may also assign to him constructively. Residence, on the other hand, denotes any factual place of abode of some permanency, that is, more than a mere temporary sojourn [citation]. While a person can have in law only one domicile [citation], he may have several ‘residences’ for different purposes [citation] ....’’
 
 (Whittell
 
 v.
 
 Franchise Tax Board
 
 (1964) 231 Cal.App.2d 278, 284 [41 Cal.Rptr. 673].)
 

 Because residence is not truly a synonym for domicile and its meaning in a particular statute is often subject to differing interpretations
 
 (Whittell
 
 v.
 
 Franchise Tax Board, supra,
 
 231 Cal.App.2d at p. 284), it is now well established that “ ‘residence’ is a term of varying import and its statutory meaning depends upon the context and purpose of the statute in which it is used. [Citations.]”
 
 (Myers
 
 v.
 
 Carter
 
 (1960) 178 Cal.App.2d 622, 625 [3 Cal.Rptr. 205].)
 

 We have been cited no California decision which holds the term “residence” as used in section 290 has a technical meaning in law such that it must be expressly defined for the jury. Nor has the Legislature found the need to define that term for purposes of section 290, which was enacted in 1947 and has often been amended.
 

 Rather, the People have cited an Idaho Supreme Court case which addresses the use of the terms “residence” and “domicile” in that states’s sex registration statute and finds those terms to be of common usage, sufficiently and generally understood so as not to require further definition
 
 (State
 
 v.
 
 Zichko
 
 (1996) 129 Idaho 259 [923 P.2d 966, 971]), to support the position the trial court here had no sua sponte duty to define “residence” for purposes of section 290. Although the Idaho case addressed the definition of those terms in a slightly different context than the issue presented here, i.e., whether the requested instructions for those terms needed to be given to prevent the statute from being unconstitutionally vague, we find its analysis instructive.
 

 The court in
 
 Zichko
 
 reviewed the language of Idaho’s sex offender registration statute in light of its purpose, which it held was to aid law enforcement in the protection of their communities by requiring sex offenders to register with local law enforcement agencies.
 
 (State
 
 v.
 
 Zichko, supra,
 
 923 P.2d at p. 968.) It found the terms “resides” or “temporarily domiciled,” used together with words encompassing “those who live ‘within their [local
 
 *1218
 
 law enforcement] jurisdiction,’ ” were sufficient to give notice of what conduct was required by that statute.
 
 (Id.
 
 at p. 969.) The court in
 
 Zichko
 
 further found that “residence” is a common term, easily understood by persons of ordinary intelligence as “connot[ing] more than a passing through or presence for a limited visit”
 
 (ibid.)
 
 and that residence need not be further defined for the jury
 
 (id.
 
 at p. 971).
 

 Looking at the statutory scheme involved here, our Supreme Court has recently reiterated: “ ‘The purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future. [Citation.]’ [Citations.] Plainly, the Legislature perceives that sex offenders pose a ‘continuing threat to society’ [citation] and require constant vigilance. [Citation.] [*][] To this end, a convicted sex offender must register not only on conviction, but whenever ‘coming into any city, county, or city and county in which he or she temporarily resides or is domiciled . . . .’ (§ 290, subd. (a).) Supplemental address change information helps law enforcement agencies keep track of sex offenders who move within the same city or county or are transient. In large cities[,] where offenders can easily relocate without reregistering, section 290[, subdivision] (f) seeks to prevent them from disappearing from the rolls. Ensuring offenders are ‘readily available for police surveillance’ [citation] depends on timely change-of-address notification. Without it law enforcement efforts will be frustrated and the statuory purpose thwarted. The statute is thus regulatory in nature, intended to accomplish the government’s objective by mandating certain affirmative acts. Compliance is essential to that objective; lack of compliance fatal. [U Considering section 290[, subdivision] (f) in light of the overarching legislative intent and comprehensive statutory scheme governing the registration of sex offenders, we conclude it imposes a continuing duty to give required notification of any change of address [citation]; accordingly, violation of that duty is a continuing offense. A defendant does not commit the crime only at the particular moment the obligation arises, but every day it remains unsatisfied. Given the persistent and palpable threat to society sex offenders represent, ‘the nature of the crime involved is such that [the Legislature] must assuredly have intended that it be treated as a continuing one.’ [Citations.]”
 
 (Wright
 
 v.
 
 Superior Court
 
 (1997) 15 Cal.4th 521, 527-528 [63 Cal.Rptr.2d 322, 936 P.2d 101].)
 

 We believe the manifest purpose of section 290 is therefore similar to that of Idaho’s sex registration statute, and is best subserved by construing “residence” in section 290, subdivision (f) as likewise referring to a term so easily understood by a person of common intelligence as “connot[ing] more than passing through or presence for a limited visit[]” that further definition
 
 *1219
 
 is not required. In both statutes, the registration requirement is used as an aid to law enforcement in locating sex offenders and a fair reading of the words in accordance with this use contemplates notification by the offender when he is in a place where he is living or temporarily staying for more than the limited time defined by the statute. Subdivision (f) of section 290 merely imposes an additional requirement that the offender notify the authorities in writing within 10 days of any change of residence address, so he can be located without difficulty.
 
 (In re Reed
 
 (1983) 33 Cal.3d 914, 927-928 [191 Cal.Rptr. 658, 663 P.2d 216] (dis. opn. of Richardson, J.).) Neither the courts nor the Legislature has seen the need to further define the common term of residence for section 290. Nor do we. The fact the jury requested a definition of that term simply does not by itself create a duty for further instruction. (See
 
 People
 
 v.
 
 Gonzalez
 
 (1990) 51 Cal.3d 1179, 1212-1213 10[275 Cal.Rptr. 729, 800 P.2d 1159].) We thus conclude the trial court did not have a sua sponte duty to define the term “residence” for purposes of defining the crime described in section 290, subdivision (f).
 
 [8]
 

 Further, because McCleod agreed at trial the given instructions adequately covered the elements for a conviction under section 290, subdivision (f), he cannot now complain that the special instruction incorrectly contained the requirement the registrant notify of “any change in residence address” rather than wording the requirement as the registrant who changes his residence address to just inform “of the new address.” Such assertion is hypertechnical and based solely on McCleod’s premise, which wé do not address, that residence has the same meaning as domicile under section 290. No instructional error is shown.
 

 II
 

 Section 1138
 

 Nor is any section 1138 violation shown. Although this section mandates a court to provide information requested by a jury concerning any point of law arising in the case (§ 1138;
 
 [9]
 

 People
 
 v.
 
 Beardslee
 
 (1991) 53 Cal.3d 68, 97 [279 Cal.Rptr. 276, 806 P.2d 1311]), where the instructions
 
 *1220
 
 given are full and complete in themselves, the court has discretion to determine what additional explanations or definitions are needed to satisfy the jury’s request for information.
 
 (Ibid,:, People
 
 v.
 
 Gonzalez, supra,
 
 51 Cal.3d at pp. 1212-1213.) Even though we have concluded the instructions on the requirements of section 290, subdivision (f) were sufficient in this case and no additional definition of “residence” was required to be given, the trial court exercised its discretion to further define the term to aid the jury in its deliberations. However, before the court and parties could agree upon a specific definition to give to the jury, the jurors reached a verdict. McCleod contends the trial court abused its discretion by permitting the jury to continue deliberations while the court crafted a definition, thereby violating section 1138.
 

 Aside from the fact we do not read section 1138 as requiring a trial court to stop jury deliberations while the court determines what definition or further explanation of a point of law is appropriate in response to a question it has exercised its discretion to answer (see
 
 People
 
 v.
 
 Aeschlimann
 
 (1972) 28 Cal.App.3d 460, 469-471 [104 Cal.Rptr. 689]), we construe McCleod’s failure to object to the continuation of deliberations when the trial court specifically asked whether there was any objection to the jury doing so while the parties worked on a definition as a waiver of any possible section 1138 error. (See
 
 People
 
 v.
 
 Kageler
 
 (1973) 32 Cal.App.3d 738, 745-746 [108 Cal.Rptr. 235].)
 

 Ill
 

 Sufficiency of the Evidence
 

 McCleod also asserts there was insufficient evidence to support his conviction for failing to reregister as a sex offender within 10 days of a change in address. He bases this claim alternatively on his earlier contention “residence” in section 290, subdivision (f) must be defined the same as “domicile,” and on his testimony that he never intended to reside anywhere other than at the apartment from which he had been evicted on August 21, 1995, or at the address he acquired on October 8,1995. He essentially argues the evidence does not show he intended to change his residence from that apartment until he acquired the new address on October 8. We disagree.
 

 In reviewing a conviction for sufficiency of the evidence, we must examine the entire record to determine whether, in the light most favorable
 
 *1221
 
 to the judgment, there is substantial evidence, either direct or circumstantial, to support the decision.
 
 (People
 
 v.
 
 Silva
 
 (1988) 45 Cal.3d 604, 625 [247 Cal.Rptr. 573, 754 P.2d 1070];
 
 People
 
 v.
 
 Johnson
 
 (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) In conducting such review we must draw all reasonable inferences in favor of the judgment.
 
 (People
 
 v.
 
 Barnes
 
 (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110].) Further, we do not reweigh the evidence; the credibility of witnesses and the weight to be accorded to the evidence are matters exclusively within the province of the trier of fact. (Evid. Code, § 312.) We simply consider whether “ ‘
 
 “any
 
 rational trier of fact could have found the essential elements of [McCleod’s] crime beyond a reasonable doubt.” ’ [Citations.]”
 
 (People
 
 v.
 
 Rich
 
 (1988) 45 Cal.3d 1036, 1081 [248 Cal.Rptr. 510, 755 P.2d 960], original italics.) Unless it is clearly shown that “on no hypothesis whatever is there sufficient substantial evidence to support the [jury’s] verdict,” we will not reverse.
 
 (People
 
 v.
 
 Hicks
 
 (1982) 128 Cal.App.3d 423, 429 [180 Cal.Rptr. 391].)
 

 Applying these rules to this case, the question is whether the record shows substantial evidence to support a finding the elements of failure to reregister under section 290, subdivision (f) have been proved. As noted above, the jury was properly instructed that in order to find McCleod guilty of such crime, it must find he was required to register as a sex offender under section 290, that he had changed his residence address and that he had “willfull[y] fail[ed] to inform in writing, within [10] days, the law enforcement agency or agencies with whom he last registered of any change of his residence.”
 

 Here, the record before the jury fully supports an inference that McCleod willfully failed to reregister a change of residence address within 10 days of his August 21, 1995, eviction. The first element was not disputed. The fact that McCleod had not in writing notified the police of any change of address after the eviction was also undisputed. That the jury did not believe McCleod’s self-serving testimony he had slept nightly at the apartment from which he had been evicted until he found a new place to live on October 8, 1995, was entirely reasonable. McCleod had provided police a false address when he was contacted on September 1,1995; the police were unable to locate him the next day at the apartment from which he was evicted; the manager of the apartment complex testified no one had occupied the apartment McCleod and his mother were evicted from since August 21, 1995; and McCleod kept his clothes at his girlfriend’s apartment and his larger possessions at his mother’s house. According to his own testimony, McCleod knew that apartment No. 15 was not his legal address after the eviction, that he was trespassing and not really living there, and that he was required to register
 
 *1222
 
 changes of addresses, but just forgot because of the confusion surrounding the eviction.
 
 [10]
 
 Additionally, McCleod testified he would not answer the door of apartment No. 15 if a police officer knocked because he did not want anyone to know he was staying there.
 

 From the totality of the evidence the jury could have reasonably inferred that after the eviction McCleod was residing with either his mother or his girlfriend until he moved in October and that he willfully failed to notify the police of either of their addresses within 10 days of the eviction so he could readily be located by law enforcement. Contrary to McCleod’s argument otherwise, the jury did not need to find he specifically “intended” to evade the police. It was sufficient for showing the “willfullness” required under section 290, subdivision (f) that his actions were done with a purpose or willingness. (CALJIC No. 1.20.) Moreover, McCleod’s intent at establishing a residence was irrelevant to the determination of the factual issue of whether he changed residence addresses within the meaning of section 290. Sufficient evidence supports McCleod’s conviction.
 

 IV
 

 Power to Strike
 

 *
 

 Disposition
 

 The judgment is affirmed.
 

 Benke, Acting P. J., and Sharp, J.,
 
 †
 
 concurred.
 

 A petition for a rehearing was denied July 16, 1997, and the opinion was modified to read as printed above. Appellant’s petition for review by the Supreme Court was denied October 1, 1997. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.
 

 [2]
 

 McCleod’s name is used interchangeably throughout the record as McLeod and McCleod. Because the abstract of judgment identifies the defendant as McCleod, we use that name throughout this opinion.
 

 [3]
 

 All statutory references are to the Penal Code unless otherwise specified.
 

 [4]
 

 Although the amended information charged McCleod with a violation of “section 290(a)(g)(2),” no issue is raised on appeal that the charging document did not provide McCleod notice of the section 290, subdivision (f) crime with which he was charged. Rather the parties and the court treated McCleod as being properly charged with the failure to reregister a change of address as defined under section 290, subdivision (f). That subdivision provided at the time of McCleod’s offense: “If any person who is required to register pursuant to this section changes his or her residence address, the person shall inform, in writing within 10 days, the law enforcement agency or agencies with whom he or she last registered of the new address. The law enforcement agency or agencies shall, within three days after receipt of this information, forward it to the Department of Justice. The Department of Justice shall forward appropriate registration data to the law enforcement agency or agencies having local jurisdiction of the new place of residence.”
 

 The People correctly note in their respondent’s brief, subdivision (g)(2) defines the punishment term for a violation of section 290, subdivision (f). Subdivision (a) of section 290 refers to the general requirement of registration of a sex offender not only upon conviction, but also whenever “coming into any city, county, or city and county in which he or she temporarily resides or is domiciled . . . .”
 

 Because the parties address their legal issues on appeal only to subdivision (f) of section 290, we construe any reference in the record to “section 290 (a)(g)(2)” as referring to section 290, subdivision (f).
 

 [5]
 

 The detective also explained about the new law that went into effect in January 1995 which mandates an offender required to register under section 290 to also reregister annually 10 days before his birthday. Although McCleod’s birthday is November 4, the detective stated he had not reregistered since 1994.
 

 [6]
 

 Because Skinner used the information he obtained from McCleod during the contact to try to find McCleod on September 2, 1995, we presume September 1, 1995, is the actual date Skinner contacted McCleod even though the trial transcript states at several places the contact was on September 11, 1995.
 

 [7]
 

 The trial court admonished the jury the prior could only be used “as it may relate to credibility.”
 

 [8]
 

 Although our conclusion makes it unnecessary to specifically address whether domicile has the same meaning as residence for purposes of section 290, we note that any construction of the terms in subdivision (f) of the statute that would limit the reregistration requirement for residence address changes to when an offender changes his legal domicile would defeat the statute’s purpose of readily locating offenders for law enforcement surveillance.
 

 [9]
 

 Section 1138 provides: “After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after
 
 *1220
 
 notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called.”
 

 [10]
 

 In other testimony McCleod said he had told police officers on October 13, 1995, that he did not have to register anymore because he had satisfied his parole.
 

 *
 

 See footnote 1,
 
 ante,
 
 page 1205.
 

 †
 

 Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.