Filed 2/11/21  P. v. Johnson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C091188 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE009475) |
| v. | |
| ORRIN RALPH JOHNSON, JR., | |
| Defendant and Appellant. | |

On November 13, 2001, defendant Orrin Ralph Johnson, Jr., was convicted of rape in violation of Penal Code[1] section 261, subdivision(a)(2), resulting in a lifelong sexual offender registration requirement pursuant to section 290.  He now appeals the judgment entered after a jury found that he failed to register a new address, arguing the definition

---

**1**     Undesignated statutory references are to the Penal Code.

1

of residence found in CALCRIM No. 1170 is unconstitutionally vague and ambiguous. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with a single count of failing to register (§ 290.018, subd. (b)) and it was alleged that defendant had a prior strike (§§ 667, subds. (b)-(i), 1170.12). Defendant pled not guilty and the failure to register was tried to a jury.

The parties stipulated that defendant had committed an offense for which he was required to register as a sex offender. From 2011 to the time of his arrest in 2019, defendant registered as a transient living on the corner of C and 10th Streets in Sacramento. He renewed this registration monthly.

In November 2018, authorities learned that defendant might be living at an address in Rancho Cordova (the Rancho Cordova address) based upon his registration of a car there. Detective Greg Steindorf visited the Rancho Cordova address and spoke with J. P., telling her that if defendant lived at that address, he needed to register it. Thereafter, on March 28, 2019, Deputy Jody Anderson was processing defendant's registration renewal and asked him about a green car registered in his name. Defendant explained he bought the car for his brother, that he did not own it, and did not know why it was in his name. While defendant denied ever using the car, he was later observed by Deputy Anderson getting into that very car after he left the office.

Deputy Anderson shared this information with Detective Steindorf, who surveilled the Rancho Cordova address around 1:00 p.m. the same day and observed defendant leaving the apartment to retrieve items from the green car on several occasions. Steindorf returned the next day and observed the green car parked on the street. When Steindorf surveilled the Rancho Cordova address on April 9, 2019, he observed defendant coming and going from the apartment and noted the green car was parked there.

Detective Steindorf again observed the car at that apartment on April 23, 2019. This same day, Steindorf spoke with R. N., the assistant manager of the apartment

2

building.  R. N. testified she recognized defendant, who she had seen "pretty often" around the apartment complex.  R. N. estimated she saw defendant a few times a week, mostly in the morning.  R. N. saw him coming from J. P.'s apartment and assumed he lived there.  Sometimes defendant would bring by money orders for the rent.  While defendant did not sign the current lease, he was listed as a tenant on a prior lease from 2016.

Based upon his surveillance, Detective Steindorf concluded defendant "was there often enough that the address should have been registered."  Defendant was arrested on June 3, 2019, at approximately 10:30 a.m. after he exited the apartment at the Rancho Cordova address.

The defense presented testimony from J. P. that she had known defendant for eight years and was in a romantic relationship with him, resulting in three children.  J. P. explained defendant's name was on the 2016 lease because management had said that "anyone that's [*sic*] going to be staying there, over there visiting, they have to be on my lease."  Defendant did not actually live at the apartment, but visited while she was at work to care for their children.  J. P. worked between 3:00 p.m. and 9:00 p.m. five days a week.  Sometimes, defendant stayed after she came home and would visit some weekends, but J. P. denied that he ever spent the night.  Defendant kept some clothing and shoes there, but no other belongings.

J. P. further testified that the green car was hers, but defendant registered the car because she did not have a driver's license.  J. P. made the payments on the car and was the only one who drove it.  The few times that defendant drove the car were without her permission.  Finally, while J. P. denied discussing sex offense registration with defendant, she eventually admitted telling defendant "to register this address, but he did not listen."

Thereafter, the jury found defendant guilty.  In a bifurcated proceeding, the court found true the allegation that defendant had a prior strike.  At sentencing, the court

3

denied defendant's *Romero*[2] motion, denied probation, and sentenced him to the low term of 16 months doubled to 32 months for the prior strike. Defendant was awarded 201 days of actual credit with 200 days of conduct credit for a total of 401 days of custody credit. The court also ordered defendant pay a $300 restitution fine, a $300 stayed parole revocation restitution fine, a $30 court facility fee, and a $40 court security fee. Defendant timely appealed.

## DISCUSSION

Defendant contends his conviction must be reversed because the definition of residence found in CALCRIM No. 1170 is so vague and ambiguous that it amounts to a deprivation of due process. He argues "defining 'residence' as 'a place where someone resides' is fundamentally meaningless in the context of a jury instruction." Defendant reasons this definition was so confusing that the jury could not have made a meaningful determination of whether the time he spent at J. P.'s apartment qualified as a residence that needed to be registered. For reasons we shall explain, we disagree.

"The trial court is charged with instructing upon every theory of the case supported by substantial evidence, including defenses that are not inconsistent with the defendant's theory of the case." (*People v. Montoya* (1994) 7 Cal.4th 1027, 1047.) "The trial court must instruct even without request on the general principles of law relevant to and governing the case. [Citation.] That obligation includes instructions on all of the elements of a charged offense." (*People v. Cummings* (1993) 4 Cal.4th 1233, 1311.) Further, where the elements of the offense include a term that has a technical legal meaning different from its common meaning, the court must define that term. (*People v. Gonzales* (2010) 183 Cal.App.4th 24, 36.) We review whether jury instructions correctly state the law de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

---

**2**    *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

4

Here the trial court instructed the jury with CALCRIM No. 1170, stating: "The defendant is charged in Count One with failing to register as a sex offender in violation of Penal Code section 290.018(b). To prove that the Defendant is guilty of this crime, the People must prove that: One, the Defendant was previously convicted of an offense for which the Defendant is required to register as a sex offender; and two, the Defendant resided in Sacramento County, California; three, the Defendant actually knew he had a duty to under Penal Code Section 290 to register as a sex offender, and that he had to register within five working days of changing his residence; and four, the Defendant willfully failed to register as a sex offender with the Sacramento County Sherriff's Department within five working days of changing his residence.

"Someone commits an act willfully when he or she does it willingly or on purpose. *Residence means one or more addresses where someone regularly resides, regardless of the number of days or nights spent there, such as a shelter or structure that can be located by a street address. A residence may include, but is not limited to: Houses, apartment buildings, motels, hotels, homeless shelters, and recreational and other vehicles.*" (Italics added.)

Defendant recognizes the italicized portion of this instruction mirrors the relevant statutory language found in section 290.011, subdivision (g), which has been upheld against a vagueness challenge. (*People v. Gonzales*, *supra*, 183 Cal.App.4th at pp. 37-39.) He nonetheless argues whether the statute has been upheld does not address whether that statute's language was so confusing that the jury was likely to misinterpret it. To the extent defendant is conceding the instruction correctly states the law, but is arguing a pinpoint instruction was required, this argument is forfeited for his failure to object below. (*People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012.) Moreover, we note that a similar challenge to the adequacy of the definition of "residence" in CALCRIM No. 1170 was already considered and rejected in *Gonzales*. (*Gonzales*, at pp. 35-37.)

5

As the *Gonzales* court explained, "The instructions sufficiently explained that registration was required for each location in which defendant was regularly spending time. The definition provided in section 290.011(g) makes it clear the Legislature did not intend to limit registration to a narrower definition than that provided in section 290.011, which was included in the jury instructions provided to the jury in the instant case. Such definition is broad, with no limitations as to a set amount of time or time of day for a finding of residence. This is consistent with the objective of section 290, which, as stated in [*People v.*] *McCleod* [(1997)] 55 Cal.App.4th 1205, is to enable local law enforcement agencies to keep known sex offenders under surveillance at all times ' " 'because the Legislature deemed them likely to commit similar offenses in the future. . . .' Plainly, the Legislature perceives that sex offenders pose a 'continuing threat to society' [citation] and require constant vigilance. [Citation.]" ' (*Id*. at p. 1218, citation omitted, quoting *Wright v. Superior Court* (1997) 15 Cal.4th 521, 527-528; [Citation.].)" (*People v. Gonzales*, *supra*, 183 Cal.App.4th at p. 37.)

We agree with *Gonzales* and conclude the trial court did not err by failing to define residence in greater detail. We find nothing inconsistent or confusing about CALCRIM No. 1170's instruction provided to the jury, nor any reasonable likelihood the jury misunderstood the instruction in the manner defendant asserts. (*People v. Cain* (1995) 10 Cal.4th 1, 36.) Ample evidence as described above supports that defendant resided at the Rancho Cordova address for purposes of section 290. For example, his own witness established he was regularly at the apartment a minimum of six hours a day five days a week, sometimes longer, between the hours of 3:00 p.m. and 9:00 p.m. Defendant was also frequently observed leaving the apartment in the morning hours, leading the assistant manager of the complex to conclude that he lived there.

## DISPOSITION

The judgment is affirmed.

/s/ _____
Robie, J.

We concur:

/s/ _____
Hull, Acting P. J.

/s/ _____
Murray, J.

7